[Civ. No. 6224. Fourth Dist. Dec. 15, 1959.]

BUENA PARK SCHOOL DISTRICT OF ORANGE
COUNTY, Appellant, v. METRIM CORPORATION
(a Corporation) et al., Respondents.

Joel E. Ogle, County Counsel (Orange), Stephen K. Tamura and Adrian Kuyper, Assistant County Counsel, for Appellant.

Ball, Hunt & Hart, Joseph A. Ball, John D. Miller, Otto A. Jacobs and Charles K. Chapman for Respondents.

MONROE, J. pro tem.*—This is a proceeding in eminent domain by which the plaintiff seeks to acquire for school purposes a tract of approximately 11 acres in the city of Buena Park. The action was commenced on April 15, 1957, which was fixed as the date of valuation. The case was submitted to a jury, which fixed the value of the property taken at $309,000 and awarded an additional sum of $16,300 as severance damages to the property of the defendants not taken. A motion for a new trial was presented and overruled, and the plaintiff school district appeals.

The amount of $16,300 as severance damages was the amount named by one of plaintiff's appraisers in his testimony and no issue concerning that matter is raised on the appeal. The valuations placed by the two expert witnesses on behalf of plaintiff were $125,600 and $139,600, including severance damages. Two expert witnesses for the defendants gave valuation of the property taken in the amount of $402,000 and $518,250.

The principal controversy between the parties both at the trial and upon the appeal centers around the status of the subject property at the time of valuation. The plaintiff contended at the trial and contends upon appeal that the property was acreage and should be valued as unimproved acreage and that evidence which treated it as a part of a subdivision was improperly received. On the other hand, the defendants contend that at the time of taking the property was, in fact, for all practical purposes, a subdivision consisting of 37 building sites. The solution of the problem is largely one of fact.

The Metrim Corporation is one of three corporations who acquired an area of approximately 900 acres in Orange County in 1956. They undertook the project of a subdivision for high-

---

* Assigned by Chairman of Judicial Council.

class residences. A portion of the area was set apart for a golf course, the subdivision to be built around the course. Metrim Corporation had acquired 90 acres of property which adjoined the golf course and the 11 acres which plaintiff seeks to acquire appears to have been the choice area adjacent to and overlooking the course. In September, 1956, a tentative map of the proposed subdivision was approved by the planning commission of the city of Buena Park, and during that month the property was annexed to that city. The area of the subdivision was zoned for single-family residences. The work of improving the subdivision proceeded and at the time of the filing of the action the golf course was well on the way toward completion. The property had been surveyed and the engineering work done and considerable of the grading was completed. The subject property had been marked out into lots and some of the streets in the area had been graded and were ready for paving. The utilities, sewer and water lines, had been brought to the edge of the subject property.

Appellant's contention in this regard arises principally from the fact that at the time of the commencement of this action a subdivision map had not been recorded. It appears that such final subdivision map had been completed and approved and had been delivered in escrow for presentation to the recorder for filing on April 11, 1957. However, the plaintiff school district filed an action of condemnation on the 10th day of April. That action covered 17 acres. Summons and complaint were not served, but as a result of the filing of the action the recorder declined to record the subdivision map. Later, on April 15, the plaintiff commenced this action and thereafter the original action was dismissed.

The just compensation which the California Constitution directs must be paid to the owner of land taken for public purposes is defined to be the fair market value. It is "the highest price estimated in terms of money which the land would bring in the open market, with reasonable time allowed in which to find a purchaser. . . ." (*Sacramento Railroad Co.* v. *Heilbron*, 156 Cal. 408 [104 P. 979].) This classic definition of market value contemplates, of course, the price which the property would have brought at the time of valuation had it then been placed upon the market and had it then been available for sale. It is obvious that in determining that value the trier of fact must disregard the fact that at that time because of the filing of condemnation proceedings the property was not actually salable. It is a matter of common knowledge that a purchaser would not buy prop-

erty in the process of being condemned except at a figure much below its actual value. It follows, therefore, that in arriving at the fair market value it is necessary that the jury should disregard not only the fact of the filing of the case but should also disregard the effect of steps taken by the condemning authority toward that acquisition. To hold otherwise would permit a public body to depress the market value of the property for the purpose of acquiring it at less than market value.

It follows, therefore, that the court could have, within the limitations of sound legal and equitable principles, advised the jury that they should treat the property as having the value that it would have had, had no preliminary action been taken by the board toward the acquisition of the property. The trial court, however, did not give any such instruction but throughout the trial permitted the defendant to treat the property for valuation purposes in the light of the conditions as they actually existed. In other words, evidence was taken concerning the value of the property as a part of the subdivision which was actually in the process of construction but which had not been yet sufficiently completed to place the 37 lots contained within the 11 acres upon the open market. In so approaching the situation the trial court committed no error.

 It is first contended by the appellant that it was error to permit expert witnesses testifying on behalf of defendant to refer to ''comparable sales'' of building sites in similar subdivisions. Pursuant to the rule laid down in *County of Los Angeles* v. *Faus*, 48 Cal.2d 672 [312 P.2d 680], defendants' witnesses on direct examination referred to comparable sales. The plaintiff's main contention in support of objections to such testimony arose from the fact that the final subdivision map had not been recorded. It was contended, therefore, that the property could not be considered as building sites but must be considered as unimproved acreage. The complete answer to this question is the fact that the property was evaluated as of the condition in which it was at the date of valuation. The jury viewed the property and its surroundings. As has been noted, the actual work of the subdivision had reached the state where the property could not longer be considered vacant, unoccupied acreage, but was properly considered as a partially completed subdivision. The receipt of evidence of sales prices of lots in other subdivisions was within the discretion of the court. (*Covina Union High School Dist.* v. *Jobe*, 174 Cal.App.2d 340 [345 P.2d 78].)

█ It was next contended that the court improperly received evidence with regard to the prices which the lots would have brought had the subdivision been completed. It is true that in determining the value the jury may not consider plans which the owner may have for future use of the property. (*Redwood City Elementary School Dist.* v. *Gregoire,* 128 Cal.App.2d 766 [276 P.2d 78].) It is therefore held that it is not proper to place a valuation upon property which is suitable for subdivision taking the market value of contemplated lots and subtracting therefrom the cost of subdivision. (*City of Los Angeles* v. *Hughes,* 202 Cal. 731 [262 P. 737].) In the Hughes case, however, there was involved the matter of an unimproved area which was adapted for subdivision purposes but had not been subdivided.

In *Napa Union High School Dist.* v. *Lewis,* 158 Cal.App.2d 69 [322 P.2d 39], there was involved a situation somewhat similar to that in the case at bar. The court permitted evidence of the ultimate value of lots in the proposed subdivision together with evidence of the cost to complete such subdivision. It was held, however, that in arriving at the cost of the proposed subdivision it was improper to figure the cost of the subdividing of the property taken as a unit because of the fact that it was but a part of the larger acreage to be subdivided. The court pointed out that the subdivision costs should be taken for the entire acreage and the proportionate share thereof applied to the condemned property. The court said:

"Testimony as to any facts showing the nature of the land in controversy and its adaptability for subdivision for residential purposes was admissible. (*Sacramento etc. R. R. Co.* v. *Heilbron,* 156 Cal. 408, 411 [104 P. 979].) It was competent for appellant to show how much it would cost to put the property to its highest and best use and to demonstrate to the jury the quality of the land for that use, thus supporting his value witness's ultimate valuations of the land taken."

Applying the rules stated, it is apparent that the value of the condemned property was not, strictly speaking, the value of the 37 lots when ready for sale to parties seeking to build the residences, less the cost of completing the subdivision. The market value was the value of the property in the condition it was at the time of valuation, taking into consideration all of those things which a purchaser would properly consider. It is probably true that a purchaser who sought to acquire the 11 acres in question on April 15, 1957, would not have paid the ultimate sales price of the 37 building sites

less the cost of completing the improvements, but in determining the amount that he would pay the purchaser would consider those matters as bearing upon the value at that time. Both of the witnesses for plaintiff gave their opinion as to the fair market value of the property as of April 15. They supported this value by evidence of comparable sales and gave figures as to the cost of completing the subdivision and the value of lots when completed. The court carefully and repeatedly instructed the jury that the amount to be awarded was the fair market value of the property taken on the 15th of April, 1957. It is to be noted that the jury found that market value to be considerably less than the value which defendants' witnesses had placed upon the 37 lots had they been completed. Its view of the property constituted material and persuasive evidence. (*Robinson* v. *County of San Diego*, 115 Cal.App. 153 [300 P. 971]; *Anderson* v. *State*, 61 Cal. App.2d 140 [142 P.2d 88]; *Gularte* v. *Martins*, 65 Cal.App.2d 817 [151 P.2d 570].) It appears, therefore, that the jury followed the instructions of the court in making its determination of the fair market value.

 In this connection, the plaintiff complains of a change made by the court in a proposed instruction. The plaintiff requested the court to instruct as follows:

"You are instructed that you *are to* determine the market value of the 11.106 acres of land as a whole as of April 15, 1957, and not as if it had been divided into lots. Evidence, if any, of what an owner might plan to do with his property is not to be considered by you as enhancing its market value." (Italics ours.)

The court gave the instruction as requested except that the words "are to" were changed to "may" so that the instruction read: "You are instructed that you may determine the market value. . . ."

Although the instructions in this regard are not as clear as they might have been, nevertheless the court did instruct the jury that it was for them to find the fair market value of the property taken on the date of taking. And it is apparent that its actual state of development was as much to be considered as the topography of the land itself. The court did properly warn the jury that plans for the future were not an element of value.

 Further complaint is made of a ruling sustaining an objection to questions asked on cross-examination concerning "profit." In cross-examining the witnesses with reference to

the ultimate value of the lots when the subdivision work was completed, it was brought out that various items necessary to be expended had been deducted from that value. Attention was called to the fact that among the items deducted nothing was deducted for "profit." A question relative to the amount of such "profit" was sustained. The basis for such objection is not entirely plain. It is always true that when the owner of property sells it for more than he paid for it, he derives a profit from the sale. Whenever the market value of property increases to an amount greater than its cost there exists a potential profit for the owner. There is no rule against such profit, nor any rule that makes it unlawful. In any event, the profit, if material at all, is a mere matter of computation. The court therefore properly ruled that it was not a material element.

It is further contended that the court erred in refusing to strike the testimony of defendants' expert witnesses. This is based upon the contention that their evidence with reference to market value is based upon a consideration of the total value of completely improved lots less the cost of subdivision. It is true that the court may properly strike from the record testimony of value which is based upon an erroneous theory of value. (*People* v. *Dunn,* 46 Cal.2d 639, 641 [297 P.2d 964].)

This ruling, however, should not be made when a portion only of the testimony of the witnesses is improper. In such case a motion should be directed to that portion of the testimony which is objectionable. As has been pointed out, much of the testimony of these expert witnesses was proper. It was proper to give testimony concerning comparable sales. It was also proper to show the cost of completing the subdivision and the value of lots therein for the purpose of throwing such light as it could upon the price which a purchaser would pay. The objections made did not point out the portion of testimony sought to be stricken, but were general in nature and aimed at the entire testimony. The court properly overruled them. (*County of Los Angeles* v. *Hoe,* 138 Cal.App.2d 74, 80 [291 P.2d 98]. *People* v. *Loop,* 127 Cal.App.2d 786, 800 [274 P. 2d 885].)

The appellant urges that the refusal of the court to give a requested instruction concerning the subdivision map was error. The map in question was the final subdivision map and would have been recorded except for the commencement of the first action. Plaintiff asked an instruction to the effect

that the purpose for which the map was received was to show that the proposed subdivision was feasible and practicable and not to bear upon valuation. This instruction was not given. However, when the court received the map in evidence the counsel for plaintiff requested the court to instruct the jury as to the purpose for which it was received. The court accordingly advised the jury that the tract map "is admitted for the sole purpose of showing adaptability and feasibility of using this property for subdivision purposes, and it is not to be considered in determining what the value of the property is." It is apparent, therefore, that no further instruction was necessary and that if any error was committed concerning the admission of this exhibit in evidence, it was an error in favor of the appellant.

Finally, the appellant predicates error upon the definition which the plaintiff gave of a market value. The court instructed:

" 'Market value' as that term is used in these instructions, is the highest price, estimated in terms of money, which the property would bring if offered for sale in the open market, with a reasonable time allowed in which to find a purchaser, or purchasers, buying with a knowledge of all the uses and purposes to which the land was reasonably adaptable on the date of valuation; the seller being willing to sell, but under no particular or urgent necessity for so doing, nor obliged to sell, and the buyer being ready, willing and able to buy, but under no particular necessity for so doing, and the sale being made upon usual and customary terms. This definition of fair market value presupposes that the parties are familiar with the property and its adaptibility and availability for its highest and best use."

Plaintiff criticises this instruction because it refers to "A purchaser, or purchasers," and because of the use of the words: "and the sale being made upon usual and customary terms." The propriety of these two additions to the classic definition of market value is doubtful but as applied to this action they do not constitute error. In *Joint Highway Dist. No. 9* v. *Ocean Shore R.R. Co.*, 128 Cal.App. 743 [18 P.2d 413], the court said at page 755:

"This is true because by what has been termed the classic definition, 'market value' is fixed as the 'highest price estimated in terms of money which the land would bring if exposed for sale in the open market with reasonable time allowed in which to find a purchaser, buying with knowledge

of all of the uses and purposes to which it was adapted and for which it was capable.' (*Sacramento R.R. Co.* v. *Heilbron, supra* [156 Cal. 408 (104 P. 979)], p. 409.) This market value may be greater or less than the value in use to either the owner or the condemnor, but in the eyes of the law it is a fixed amount determined by 'the highest sum which the property is worth to persons generally, purchasing in the open market in consideration of the land's adaptability for any proven use.' (*Sacramento R.R. Co.* v. *Heilbron, supra,* p. 412.)

''We further believe that the definition of market value first above quoted and often found in the decisions has itself brought about some confusion. It apparently contemplates the highest price which '*a* purchaser' will pay. This would seem to fix market value by the necessities or whims of a single purchaser rather than by the 'highest sum which the property is worth to persons generally.' ''

Both of the witnesses for defendants testified on cross-examination that they made no distinction in value as between a sale to one purchaser or a sale to a number of purchasers. They placed their valuation as that of the entire property. Actually the fair market value contemplated by the law means the price for which the property could be sold and is without regard to whether it be bought by one individual or by several purchasers or by a syndicate formed for the purchase. It assumes that the purchaser, whoever he may be, has ample funds to make the purchase. Bringing into the definition the thought of additional persons could not therefore have misled the jury, in view of the repeated instructions to the effect that it was for the jury to find the fair market value of this 11 acres of land on the date of valuation. With respect to the addition of the language ''usual and customary terms,'' this addition as a general rule should not be made. Appellant contends that the sale must be for ''cash.'' This is not correct. The classic definition is the ''highest price estimated in terms of money.'' This language was carefully chosen. It contemplates a value expressed in terms of money, which means cash or its equivalent. The thought conveyed is that it is the amount which would be given by a purchaser either in cash or its equivalent. The manner of the actual sale is not involved. Whether a purchaser would pay cash or would give considerations of equivalent value is not vital, so long as the fair market value governs. No evidence was introduced of any valuation based on ''terms,'' and in view of the definition of fair market value the jury could not have been misled.

No other error in instructions is claimed in appellant's brief.

We conclude, therefore, that there was substantial evidence to support the valuation fixed by the jury and there is no error relied upon by appellant which would justify a reversal.

Judgment affirmed.

Griffin, P. J., and Shepard, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 10, 1960.