[Civ. No. 17137. Fourth Dist., Div. Two. Feb. 17, 1978.]

ORANGE COUNTY FLOOD CONTROL DISTRICT,
Plaintiff and Appellant, v.
SUNNY CREST DAIRY, INC., Defendant and Respondent.

744

## COUNSEL

Adrian Kuyper, County Counsel, and Laurence M. Watson, Deputy County Counsel, for Plaintiff and Appellant.

Thomas G. Baggot, Gideon Kanner and George E. Atkinson, Jr., for Defendant and Respondent.

## OPINION

TAMURA, J.—The Orange County Flood Control District (district) appeals from a judgment in condemnation and an order awarding attorneys' fees.[1]

The main issue in this appeal is whether the trial court erred in permitting the condemnee to pursue the theory that the highest and best use of the property in the *before* condition was a nonconforming use as of the date the eminent domain proceeding was filed rather than a permitted use on the date of value. The factual setting out of which this and other related issues arise is as follows:

[1]This case was tried before the operative date of the new eminent domain law (Code Civ. Proc., § 1230.010 et seq., operative July 1, 1976). Unless otherwise indicated, all *Code of Civil Procedure section references in this opinion will be to the law in effect at the time of trial.*

*The Eminent Domain Proceeding:*

The district filed an action in eminent domain to acquire a perpetual easement for an underground storm channel and a temporary construction easement along and adjacent to the perpetual easement. The larger parcel consisted of 9.35 acres under a long-term lease to Sunny Crest Dairy, Inc. (hereafter Sunny Crest). The property is located in the City of Westminster and fronts on the southerly side of Westminster Avenue. The land in and over which the perpetual easement was sought consisted of a 50-foot wide strip (designated Parcel 104) comprising 1.41 acres along and adjacent to the east and south boundary lines of the larger parcel. The land over which the temporary construction easement was sought consisted of a 30-foot wide strip (designated Parcel 104.1) comprising .786 acre lying along and adjacent to the interior boundary lines of Parcel 104. The construction easement was for the period January 1974 to May 1975.

The district filed the action on October 29, 1973, and obtained an order of possession a day later.

*Zoning:*

The northerly half of the larger parcel was zoned commercial and the southerly half single family residential. However, at the time the eminent domain proceeding was filed, the property was subject to a nonconforming use for a cash-and-carry dairy business conducted on the land by Sunny Crest.

In December 1973, after the district commenced construction of the storm channel, Sunny Crest ceased its cash-and-carry dairy business and confined its activities to a dock dairy business on .6 acre at the northwest corner of the property. A cash-and-carry dairy business is one in which milk is produced, processed and sold on the site; whereas a dock dairy operation is one where milk is processed and sold at the site. According to Sunny Crest, it discontinued the cash-and-carry dairy operation because the district's construction activities made it economically infeasible to continue operating that business on the land.

In July 1975, Sunny Crest obtained a conditional use permit to develop the remainder (8.75 acres) in conjunction with an adjoining 1.39-acre parcel to the east for a mobile home park.

*Valuation Testimony:*

Although trial did not commence until October 20, 1975, the date of value was stipulated to be January 20, 1975.[2]

Experts on both sides agreed the highest and best use of the larger parcel in the *after* condition was for the development of the remainder, along with the adjoining 1.39-acre parcel, for a mobile home park and retention of the dock dairy business on the .6 acre at the northwest corner of the property. The controversy centered on the highest and best use of the property in the before condition.

As of the date of value, the nonconforming cash-and-carry dairy use had been lost through cessation of that use for more than one year. Sunny Crest's position nevertheless was that the highest and best use of the land in the before condition was the nonconforming use. Sunny Crest's experts arrived at their opinion of the highest and best use in the before condition on the following theory: Institution of the condemnation action and the district's possession of the strip of land sought to be condemned necessitated removal of a substantial number of cows maintained on the premises; herd reduction coupled with the disruption of existing drainage facilities resulting from the district's construction activities rendered it infeasible to continue the cash-and-carry dairy operation; thus the loss of the nonconforming use was the direct result of the district's condemnation activities, and accordingly, any diminution in market value resulting from that loss must be disregarded in ascertaining just compensation and damages.

Sunny Crest's experts were also permitted to testify that the taking caused "temporary severance damage" for the years 1974 to 1975. Sunny Crest adduced evidence showing that upon cessation of the cash-and-carry dairy business, it immediately investigated other feasible uses for the remainder, including its potential development as a mobile home park; in order to satisfy a zoning requirement of a minimum 10-acre site for a mobile home park, Sunny Crest acquired an adjoining 1.39-acre parcel and engaged in lease negotiations with a mobile home park developer; in July 1975, Sunny Crest obtained a conditional use permit for a mobile home park; following further negotiations, a lease with the

---

[2]This was the date on which the trial was originally set.

developer was executed.[3] Based upon the foregoing evidence, Sunny Crest's experts testified that Sunny Crest suffered "temporary severance damage" through loss of the fair rental value of that part of the remainder not burdened by the permanent and temporary easements for two years.

In addition, Sunny Crest was permitted to introduce evidence of "out-of-pocket expenses" it had incurred in bringing about the mobile home park development. The evidence was admitted on the theory the expenses were incurred in mitigation of damages.[4]

The district's position was that highest and best use must be determined as of the date of value. Its expert, Mr. Joseph A. Mueller, was of the opinion the highest and best use of the remainder in the before and after conditions was for a mobile home park development.[5]

*The Awards:*

The jury verdict was as follows:

---

[3]By the time of trial, construction of the mobile home park was underway.

[4]The following is a summary of the opinions of Sunny Crest's experts on fair market value and damages:

| | Williams | McCune |
|---|---|---|
| Fair market value of entire parcel in the before condition (highest and best use—cash-and-carry dairy operation) | $532,000 | $605,555 |
| Fair market value of part taken (permanent and temporary easements) | 54,114 | 54,171* |
| Value of remainder in before condition (cash-and-carry dairy operation) | 482,776 | 551,384 |
| Value of remainder in after condition (mobile home park) | 367,320 | 483,180 |
| Permanent severance damage | 115,456 | 68,204 |
| Temporary severance damage (two-year fair rental value) | 57,100 | 64,074 |
| Expenses incurred in mitigation of damages | (no figure given) | 22,988 |

[5]A summary of Mueller's valuation opinion is as follows:

| | |
|---|---|
| Fair market value of entire parcel in before and after conditions (highest and best use of remainder for mobile home park and balance for dock dairy operation) | $485,000 |
| Fair market value of part taken | 28,400 |
| Severance damage | None |

---

*This figure does not include the market value of the temporary easement, which McCune valued at $5,047.

Just compensation for part taken

| | | |
|---|---|---|
| Permanent easement | $33,611 | |
| Temporary easement | 4,900 | |
| Total | $38,511 | $38,511 |
| Permanent severance damage | | 12,000 |
| Temporary severance damage | | 33,557 |
| Damages in mitigation | | 22,988 |
| Total award | | $107,056 |

On a motion pursuant to Code of Civil Procedure section 1249.3, the court awarded the condemnee attorneys' fees calculated on a percentage of the total verdict as well as expert witness' fees.[6]

*Contentions on Appeal:*

The district contends the court erred in the following respects: (1) In permitting Sunny Crest to pursue and to recover compensation on its theory of highest and best use of the property in the before condition; (2) in overruling district's objections to evidence of the loss of fair rental value of the property for the years 1974 to 1975; (3) in denying district's motion to strike evidence of claimed damage in mitigation; and (4) in allowing interest on the award for the period prior to January 1, 1976, in addition to the "Temporary severance damage."[7]

In the ensuing discussion, we have concluded that under the unique facts of the instant case, the court properly permitted Sunny Crest to adduce valuation evidence based on its theory of the before condition's highest and best use. We have further concluded, however, that the court erred in permitting Sunny Crest to recover the fair rental value of the property for the two-year period and the claimed damages in mitigation.

---

[6]Following the jury verdict, a court trial was held on Sunny Crest's claim for damages for loss of goodwill and the claim was disallowed. That issue has since been resolved by *Community Redevelopment Agency* v. *Abrams,* 15 Cal.3d 813, 832 [126 Cal.Rptr. 473, 543 P.2d 905], and it is not involved on this appeal.

[7]The judgment of condemnation provided for 7 percent interest on the total award from March 1, 1974, to August 21, 1975 (the date Sunny Crest withdrew $35,000 from the sum deposited in court by the district) and on $72,056 from August 22, 1975, to the date the balance of the award is paid into court.

I

## Highest And Best Use

The district mounts the following two-pronged attack on Sunny Crest's theory of highest and best use of the property in the before condition: (a) Highest and best use must as a matter of law be determined as of the date of value, and (b) the evidence fails to support the theory espoused by Sunny Crest.

(a) *District's Standing to Challenge the Legality of Sunny Crest's Theory:*

Before reaching the merits of the district's contentions, we deal with Sunny Crest's threshold response that the district failed to preserve for appellate review the legal propriety of Sunny Crest's highest and best use theory.

The record reveals the following: Mr. Williams was Sunny Crest's first expert. Although the district objected to some of Mr. Williams' testimony concerning the profitability of the cash-and-carry dairy business, no objections were interposed to his opinion that the highest and best use in the before condition was the nonconforming cash-and-carry dairy use or to his value opinions based upon that use. However, after Mr. Williams concluded his testimony and Sunny Crest's next expert, Mr. McCune, was sworn and testified as to his qualifications, the district moved "to exclude the valuation testimony of Mr. Williams in its entirety" on the ground his opinions were based on a nonconforming use which was no longer extant as of the date of value. Following extended argument and discussion, the court expressed the view that under the pertinent case law, Sunny Crest was entitled to proceed on its theory of highest and best use.

If the foregoing had been the only record made by the district, there might be merit in Sunny Crest's contention that the district failed to make an adequate record to challenge the validity of Sunny Crest's theory on appeal. Ordinarily a motion to strike a valuation witness' testimony must be directed with precision to the particular testimony sought to be stricken, especially where only part of it is objectionable. (*Rose* v. *State of California,* 19 Cal.2d 713, 742 [123 P.2d 505]; *San Bernardino County Flood Control Dist.* v. *Sweet,* 255 Cal.App.2d 889, 901

[63 Cal.Rptr. 640]; *People* v. *Loop,* 127 Cal.App.2d 786, 800 [274 P.2d 885].) In the case at bench, much of Mr. Williams' testimony and value opinions was not subject to the district's objection that he used the wrong date of value. Consequently, the district's motion to strike "the valuation testimony of Mr. Williams in its entirety" standing alone, may have lacked the specificity required to preserve for appellate review the issue of the validity of Sunny Crest's theory of highest and best use. (See *Rose* v. *State of California, supra,* 19 Cal.2d 713, 742.)

However, the record shows that contemporaneously with the motion to strike Mr. Williams' testimony, the district made a motion *in limine* to exclude any valuation opinion by Sunny Crest's next expert, Mr. McCune, based upon a highest and best use for a cash-and-carry dairy operation. Following denial of the motion to strike Mr. Williams' testimony, the motion *in limine* was likewise denied on the ground Sunny Crest was legally entitled to pursue its theory. Despite the generality of the motion to strike, the record shows that the two motions fairly apprised the court and opposing party of the particular evidence sought to be stricken and to be excluded and that the issue which district seeks to raise on this appeal was fully argued and was squarely ruled upon by the trial court. Accordingly, the district is entitled to have the issue of the validity of Sunny Crest's theory of highest and best use reviewed on appeal.

(b) *Validity of Sunny Crest's Theory of Highest and Best Use:*

The district's attack upon Sunny Crest's theory of highest and best use is premised on the proposition that there can be only one date of value in the ascertainment of fair market value and that is the date prescribed by the Legislature in Code of Civil Procedure section 1249.[8] In the instant case, the parties stipulated the date of value was January 20, 1975. Inasmuch as the nonconforming use had expired by that date, the district

[8]Code of Civil Procedure section 1249 provides as follows: "For the purpose of assessing compensation and damages the right thereto shall be deemed to have accrued at the date of the issuance of summons and its actual value at that date shall be the measure of compensation for all property to be actually taken, and the basis of damages to property not actually taken but injuriously affected, in all cases where such damages are allowed as provided in Section 1248; provided, that in any case in which the issue is not tried within one year after the date of the commencement of the action, unless the delay is caused by the defendant, the compensation and damages shall be deemed to have accrued at the date of the trial. No improvements put upon the property subsequent to the date of the service of summons shall be included in the assessment of compensation or damages."

contends Sunny Crest was precluded as a matter of law from pursuing its theory of the before condition's highest and best use. The contention must fail.

It is a cardinal principle of the law of eminent domain that a definite date be fixed as of which property is to be valued for the purpose of ascertaining just compensation. (4 Nichols, The Law of Eminent Domain (3d ed. rev. 1976) § 12.23, p. 12-98; 1 Orgel, Valuation Under Eminent Domain (2d ed. 1953) § 21, p. 96.) In this state, unless a different date is required to satisfy the constitutional requirement of just compensation, the valuation date must be fixed in accordance with Code of Civil Procedure section 1249. (*Klopping* v. *City of Whittier,* 8 Cal.3d 39, 44 [104 Cal.Rptr. 1, 500 P.2d 1345]; *State of California* ex rel. *Dept. of Water Resources* v. *Clark,* 33 Cal.App.3d 463, 467-468 [109 Cal.Rptr. 39].) It is also the law that where parties stipulate to a valuation date which is at variance with that prescribed by Code of Civil Procedure section 1249, they are bound by the stipulation. (*State of California* ex rel. *Dept. of Water Resources* v. *Clark, supra,* 33 Cal.App.3d 463, 468.) It does not follow, however, that there is a legally unacceptable inconsistency between the stipulated date of value and the court's ruling permitting Sunny Crest to prove market value on the basis that the highest and best use in the before condition was the nonconforming use, even though such use had ceased as of the date of value.

Sunny Crest adduced evidence that the district's possession of the easements and commencement of construction of the public improvement brought about the cessation and loss of the nonconforming use, which in turn resulted in a substantial diminution in market value of the property. In light of the evidence before it, the court properly permitted Sunny Crest's experts to base their value opinions on the premise that the nonconforming use was the highest and best use in the before condition. The court's ruling was supported by the principle enunciated in *Buena Park School Dist.* v. *Metrim Corp.,* 176 Cal.App.2d 255, 258-259 [1 Cal.Rptr. 250], and approved in *Klopping* v. *City of Whittier, supra,* 8 Cal.3d 39, 50-51, that the constitutional mandate of just compensation requires property to be valued without regard to value-depressing acts of the condemner.

In *Buena Park School Dist.* v. *Metrim Corp., supra,* 176 Cal.App.2d 255, this court stated: "This classic definition of market value contemplates, of course, the price which the property would have brought at the

time of valuation had it then been placed upon the market and had it then been available for sale. It is obvious that in determining that value the trier of fact must disregard the fact that at that time because of the filing of condemnation proceedings the property was not actually salable. It is a matter of common knowledge that a purchaser would not buy property in the process of being condemned except at a figure much below its actual value. It follows, therefore, that in arriving at the fair market value it is necessary that the jury should disregard not only the fact of the filing of the case but should also disregard the effect of steps taken by the condemning authority toward that acquisition. To hold otherwise would permit a public body to depress the market value of the property for the purpose of acquiring it at less than market value." (*Id.,* at pp. 258-259.)

In *Klopping* v. *City of Whittier, supra,* 8 Cal.3d 39, the Supreme Court expressly approved the principle embraced in the quoted statement from *Metrim* (*id.,* at p. 51) and cited the case as an implicit approval of the rule adopted in *Klopping* permitting a property owner to recover damages for the value-depressing *precondemnation* acts which fall short of a de facto taking caused by physical invasion of the property or the imposition of unreasonable legal restraints on use of the land (*id.,* at p. 46). The court held that "when the condemner acts unreasonably in issuing precondemnation statements, either by excessively delaying eminent domain action or by other oppressive conduct, our constitutional concern over property rights requires that the owner be compensated." (*Id.,* at pp. 51-52.)

The district urges that this case should not be governed by the principle enunciated in *Metrim* and approved in *Klopping* because there was no evidence the district engaged in unreasonable or oppressive conduct. The contention lacks merit. *Klopping* made unreasonable or oppressive conduct a condition to the recovery of damage caused by precondemnation activity because otherwise public agencies would be deterred from affording adequate public participation in project planning (*Klopping* v. *City of Whittier, supra,* 8 Cal.3d 39, 51), would be severely hampered in undertaking long-range planning (see *Selby Realty Co.* v. *City of San Buenaventura,* 10 Cal.3d 110, 119 [109 Cal.Rptr. 799, 514 P.2d 111]; *Klopping* v. *City of Whittier, supra,* 8 Cal.3d 39, 45; *Smith* v. *State of California,* 50 Cal.App.3d 529, 535-536 [123 Cal.Rptr. 745]), and would be encouraged to make premature purchases of property which may turn out to be unneeded (*Smith* v. *State of California, supra,*

50 Cal.App.3d 529, 536). But those considerations do not come into play where the public authority has actually embarked on the acquisition of property by eminent domain.

Rather, the applicable competing policies which must be weighed are those which have been stated as follows: " ' "[O]n the one hand the policy underlying the eminent domain provision in the Constitution is to distribute throughout the community the loss inflicted upon the individual by the making of the public improvements. . . . On the other hand, fears have been expressed that compensation allowed too liberally will seriously impede, if not stop, beneficial public improvements because of the greatly increased cost." ' (*Albers* v. *County of Los Angeles* (1965) 62 Cal.2d 250, 263 [42 Cal.Rptr. 89, 398 P.2d 129], quoting from *Bacich* v. *Board of Control* (1943) 23 Cal.2d 343, 350 [144 P.2d 818].)" (*Varjabedian* v. *City of Madera,* 20 Cal.3d 285, 296 [142 Cal.Rptr. 429, 572 P.2d 43].) On the basis of those policy considerations, it has been held that " '[m]erely rendering private property less desirable for certain purposes, or even causing personal annoyance or discomfort in its use, will not constitute the damage contemplated by the constitution; . . .' " (*Heimann* v. *City of Los Angeles,* 30 Cal.2d 746, 756 [185 P.2d 597], quoting *Eachus* v. *Los Angeles etc. Ry. Co.,* 103 Cal. 614, 617 [37 P. 750].) But where there has been a substantial impairment of use which diminishes the market value of the property, compensation is constitutionally compelled. (*City of Oakland* v. *Nutter,* 13 Cal.App.3d 752, 769 [92 Cal.Rptr. 347]; see *Breidert* v. *Southern Pac. Co.,* 61 Cal.2d 659, 664-667 [39 Cal.Rptr. 903, 394 P.2d 719].)

In the instant case, according to the evidence adduced by Sunny Crest, use of its property was impaired to the extent that it was economically infeasible to use it for cash-and-carry dairy purposes. Such impairment is manifestly of a substantial nature. Accordingly, in order to effectuate the principle of just compensation enunciated in *Metrim* and approved in *Klopping,* the trial court properly permitted Sunny Crest's experts to disregard that impairment in use in arriving at their opinion of fair market value.

The district urges that *State of California* ex rel. *Dept. of Water Resources* v. *Clark, supra,* 33 Cal.App.3d 463, compels a result contrary to that which we have reached. We disagree. Despite superficial factual similarities to the case at bench, *Clark* did not involve the issue here presented. There, on an appeal from a judgment in a state condemnation

action, the property owners complained they were erroneously restricted to the stipulated date of value, a date some two years after the eminent domain action had been filed, in proving the highest and best use of the property in the before condition and were precluded from showing the condition of the property when the summons was issued. They contended that the court erred in rejecting their offer of proof that use of the land for a contemplated subdivision which was permissible on the date the eminent domain action was filed was no longer feasible on the date of value because of a restrictive interpretation of a county subdivision ordinance. The reviewing court held that the highest and best use in the before and after conditions should be determined as of the stipulated date of value and rejected the implication in the owners' contention "that experts, in stating opinions as to fair market value in the 'before' condition, should be permitted to ignore conditions which a willing buyer would consider on the stipulated date of value and substitute therefor fictitious conditions existing nearly two years beforehand, even though a willing buyer would not consider such earlier conditions as pertinent to his purchase." (*Id.,* at p. 469.) *Clark* is materially distinguishable in two important respects: First, in *Clark,* unlike the instant case, use impairment which resulted in the claimed diminution in market value, assuming it to have been compensable, was not caused by the condemner (the state) but by the county. Second, in *Clark,* the owners were seeking to avail themselves of two dates of value whereas in the instant case all of the experts adhered to the stipulated date in arriving at their value opinions.

(c) *Sufficiency of the Evidence to Support Sunny Crest's Theory of Highest and Best Use:*

The district attacks the sufficiency of the evidence to support Sunny Crest's theory of highest and best use on two grounds: (1) The nonconforming use was not lost because of any act of the district, but was the result of Sunny Crest's business decision, and (2) the court erroneously admitted evidence of the profitability of the cash-and-carry dairy operation. Neither ground is meritorious.

Whether the district caused the loss of the nonconfirming use or, as the district puts it, the loss was the result of "the business decision of Sunny Crest" was a factual issue to be resolved by the fact finder. By awarding permanent severance damages, the jury impliedly found in favor of Sunny Crest's theory. Thus, the district's attack is simply one

going to the sufficiency of the evidence to support the jury's implied finding.

■ A reviewing court must start with the presumption that the record contains evidence to support every finding of fact; the burden is on the party attacking a finding of fact for lack of evidentiary support to demonstrate that there is no substantial evidence to support the challenged finding; the appellant must set forth in his brief all the material evidence bearing on the issue and not merely the evidence favorable to him, and failure to do so may be deemed a waiver of the claimed error. (*Foreman & Clark Corp.* v. *Fallon,* 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362]; *Glendale Fed. Sav. & Loan Assn.* v. *Marina View Heights Dev. Co.,* 66 Cal.App.3d 101, 152 [135 Cal.Rptr. 802].)

■ The district, however, simply directs our attention to testimony from Sunny Crest's witnesses that it would have been physically possible to continue the cash-and-carry dairy use of the property by reducing the size of the herd. On the basis of that testimony, district asserts that Sunny Crest had a choice of either continuing the nonconforming use on a limited scope[9] or ceasing that use entirely. This, however, was not all of the evidence bearing on the issue. There was substantial testimony that continued operation with a reduced herd was economically infeasible. In addition, there was testimony that the district's construction activities so disrupted drainage from the property to render it physically impossible to maintain a sufficient herd to continue operation. Sunny Crest was not required to pursue an economically ruinous course of action simply because it may have been physically possible to do so. (See *Benenson* v. *United States* (Ct.Cl. 1977) 548 F.2d 939, 949.) Needless to say, it was for the fact finder to resolve conflicts in the evidence and to judge the credibility of the witnesses. (*San Bernardino County Flood Control Dist.* v. *Sweet, supra,* 255 Cal.App.2d 889, 906-907.) There was evidence of sufficient substantiality to support the jury's implied finding that the district's acts caused Sunny Crest to lose the nonconforming use.

■ The district's second attack on Sunny Crest's theory of highest and best use is that the trial court committed prejudicial error in

---

[9]Even if Sunny Crest had continued the cash-and-carry dairy use on a limited scale, the nonconforming use to the extent it was enjoyed when the eminent domain action was filed might not have been preserved. (*City of Los Angeles* v. *Wolfe,* 6 Cal.3d 326, 337 [99 Cal.Rptr. 21, 491 P.2d 813].)

admitting evidence to show that the cash-and-carry dairy operation was profitable. This contention must likewise fail.

While loss of profits from a business is not compensable as an element of damage in eminent domain (*Ventura County Flood Control Dist. v. Security First Nat. Bank,* 15 Cal.App.3d 996, 1002 [93 Cal.Rptr. 653]), evidence of economic feasibility of a claimed highest and best use of the property bears upon market value and is, therefore, admissible (see *San Bernardino County Flood Control Dist. v. Sweet, supra,* 255 Cal.App.2d 889, 899). "[T]he highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably near future is to be considered, not as the measure of value, but to the extent that the prospect of such use affects the market value of the land; . . ." (*People v. Ocean Shore Railroad,* 32 Cal.2d 406, 425-426 [196 P.2d 570, 6 A.L.R.2d 1179]; accord *People* ex rel. *Dept. Pub. Wks. v. Flintkote Co.,* 264 Cal.App.2d 97, 102 [70 Cal.Rptr. 27].) Here, as in *People* ex rel. *Dept. Public Works v. Giumarra Vineyards Corp.,* 245 Cal.App.2d 309 [53 Cal.Rptr. 902], evidence of the profitability of the cash-and-carry dairy operation, not evidence of actual profits, was admitted to show the economic feasibility of the claimed highest and best use; it was not offered or received to show loss of profits as enhanced damages. (*Id.,* at p. 320.) The trial court did not abuse its discretion in overruling district's objection to evidence of the profitability of the cash-and-carry dairy operation.[10]

---

[10]In a related contention, the district contends that the trial court erred in refusing to give the district's proposed instruction, reading as follows:

"PLAINTIFF'S SPECIAL INSTRUCTION NO. 5

"The destruction, frustration or interference with a business enterprise which is being carried on in connection with the property taken in condemnation is what is termed in law consequential damage and is not an element to be considered in arriving at fair market value. Under California law it is the property which is taken and the severance damage to the remaining property owned which is compensable, and not the business enterprise and the damage, if any, to the business or operation carried on in connection with the ownership of the property, and such factors or elements of damage are not to be considered by you in arriving at your verdict.

"*People v. Ricciardi* (1943), 23 Cal.2d 390, 395-396;

"*Oakland v. Pacific Coast Lumber, etc., Co.* (1915), 171 Cal. 392, 398-399;

"Request that this be given in lieu of B.A.J.I. 11.91"

The contention merits little consideration. The court gave BAJI No. 11.91 which reads as follows:

"You must not include in your verdict any sum for loss of or inconvenience to business which may or may not have occurred in this case."

The foregoing instruction adequately covered the subject of business loss or loss of profits.

## II

### "Temporary Severance Damage"

We turn to the district's attack upon the award of "temporary severance damage," which Sunny Crest more fittingly characterizes on appeal as damages for "temporary taking."

Sunny Crest's experts testified that the property produced no income during the two years from December 31, 1973 (the date Sunny Crest ceased the cash-and-carry dairy operation) to January 1, 1976 (the date rental income commenced under Sunny Crest's mobile home park lease). On the theory that the loss of income was occasioned by the condemnation proceedings and the district's construction activities and was, therefore, compensable as "temporary severance damages," Sunny Crest sought to introduce through Mr. Williams evidence of the fair rental value of the property for the two-year period. The district objected to such evidence for the period beyond May 1, 1975, on the ground that by that date the district had completed its work and all rights in the strips of land sought to be taken, except for the district's rights in the perpetual easement, had reverted to the owner. The judge treated the objection as a motion to strike Mr. Williams' testimony insofar as it related to loss of fair rental value for any period beyond May 1, 1975, but, instead of ruling on the motion, took it under submission and permitted Mr. Williams to give his opinion of the fair rental value for the entire two-year period. The district interposed a like objection to Mr. McCune's testimony on the same subject which resulted in the same ruling. Mr. Williams based his opinion of the fair rental value of the property on a cash-and-carry dairy use; Mr. McCune based his opinion on a mobile home park use.

The district's expert testified that the remainder could have been developed for a mobile home park as soon as the cash-and-carry dairy operation was terminated "if everything had been ready to go." In his opinion, Sunny Crest suffered no loss of use of the remainder and was not entitled to "temporary severance damages."

The district advances a number of contentions respecting the award of "temporary severance damages." It urges the court erred in denying its motion to strike evidence of fair rental value for the period beyond May 1, 1975; the court should not have admitted any evidence of fair rental

value without. making a prior determination that there had been a substantial impairment of use of the remainder;[11] the court compounded its error by permitting the award of "temporary severance damages" to stand and in addition, by allowing interest on the entire award for the period prior to January 1, 1976. The district argues that there was a total lack of evidence of any substantial impairment of use of the remainder during any period and that the judgment should be modified by striking the award of "temporary severance damages" or, in the alternative, by disallowing interest on the judgment prior to January 1, 1976.

■ Although not articulated with clarity, the thrust of the district's attack upon the "temporary severance damages" award is that it is unsupported by the evidence and is contrary to the law.[12] The district is entitled to raise that issue despite the limited scope of its trial objection to the admissibility of the evidence of fair rental value. ■ Failure to object to evidence or to move for a nonsuit or directed verdict does not preclude an appellant from attacking a finding on the ground of insufficiency of the evidence to support it. (*First National Bank of Monrovia* v. *Maryland Casualty Company,* 162 Cal. 61, 72-73 [121 P. 321]; *Martin* v. *Hall,* 20 Cal.App.3d 414, 421 [97 Cal.Rptr. 730, 53 A.L.R.3d 719].) Similarly, a contention that the uncontradicted facts establish as a matter of law that the decision below was wrong may be made for the first time on appeal. (*Jakobsen* v. *Peratis,* 213 Cal. 671, 672 [3 P.2d 305].) Here, that contention was also made in the court below on the district's motion for a new trial. One of the grounds for the motion was that the verdict awarding "temporary severance damages" was contrary to law in that there was no evidence of substantial interference with Sunny Crest's use of its property outside the easement area. We conclude that the propriety of the "temporary severance damages" award in its entirety is properly before us.

■ Sunny Crest should not have been permitted to recover the fair rental value of the land for the two-year period or any part thereof as

---

[11]The contention might have had validity had the district raised the issue at trial. (*Breidert* v. *Southern Pac. Co., supra,* 61 Cal.2d 659, 664; *Riverside County Flood etc. Dist.* v. *Halman,* 262 Cal.App.2d 510, 516-517 [69 Cal.Rptr. 1].) No objection, however, was made at trial on that ground and, therefore, the issue may not be raised for the first time on appeal.

[12]Sunny Crest so views the district's contention. Sunny Crest argues·that under the evidence it was entitled to compensation for "temporary taking" and "compensation for loss of use of their property following condemnor's relinquishment of the temporary taking; . . ."

damages for a temporary taking of the remainder. There was no evidence of a physical taking of the remainder or its impairment for any permissible use other than the cash-and-carry dairy operation. While there was some testimony by the mobile home park developer that he could not have commenced construction while the district was doing its work, there was no evidence that Sunny Crest or the developer was then ready to commence construction of the mobile home park. Indeed, the uncontroverted evidence was that because Sunny Crest had to acquire the additional 1.39-acre parcel, to secure a conditional use permit, and to negotiate the lease, the developer was not ready to commence construction until long after the district completed its work. In short, there was no evidence that anything the district did impaired the use of the remainder for a mobile home park development or any other permissible purpose other than the nonconforming use.[13] Thus, there was no factual basis for the recovery of damages on the theory of a temporary taking of the remainder. (See *County of Los Angeles* v. *Smith,* 55 Cal.App.3d 749, 754-755 [127 Cal.Rptr. 666].)

In *Klopping* v. *City of Whittier, supra,* 8 Cal.3d 39, 53, the court held that an appropriate measure of just compensation for diminution in market value of property resulting from the loss of rental income caused by unreasonable or oppressive *precondemnation* acts falling short of a de facto taking was the fair rental value of the property. Here, to the extent that market value of the property was diminished by the impairment of use of the remainder for a cash-and-carry dairy business and its consequent effect upon the income-producing capability of the property, Sunny Crest was permitted to seek and recover market value and severance damages on the basis that the nonconforming use continued to the date of value. To allow an additional recovery of the fair rental value of the property for the period in question would amount to a double recovery of compensation for diminution in market value caused by the same use impairment. This the law will not permit. (See *Albers* v. *County of Los Angeles,* 62 Cal.2d 250, 268 [42 Cal.Rptr. 89, 398 P.2d 129].) As we have explained, loss of income, as such, is not constitutionally compensable in eminent domain as an item of enhanced damages.

---

[13]Sunny Crest's assertion that the district's own appraiser "agreed that temporary damages were sustained by the owners" is unsupported by the record. The record reference for the assertion is to the appraiser's testimony that "the property owner was deprived of the use of the surface of this land for 16 months, and I feel he's entitled to be compensated for that." The record shows, however, that the next question asked was what he meant by "this land" to which he responded: "Parcel 104, that is the strip along the east and the south portion of the property."

The cases cited by Sunny Crest (*Kimball Laundry Co.* v. *U. S.,* 338 U.S. 1 [93 L.Ed. 1765, 69 S.Ct. 1434]; *U. S.* v. *General Motors Corp.,* 323 U.S. 373 [89 L.Ed. 311, 65 S.Ct. 357]; *United States* v. *37.15 Acres of Land, etc.* (S.D.Cal. 1948) 77 F.Supp. 798; *United States* v. *Certain Parcels of Land* (S.D.Cal. 1945) 63 F.Supp. 175) simply involve application of the valuation principle that just compensation for a temporary taking is the fair rental value of the property. Here there was no temporary taking of the remainder; there was only a use impairment for which recovery was permitted under the *Metrim-Klopping* rationale.

Sunny Crest's attempt to recover fair rental value for the two years was in reality an attempt to recover a business loss.[14] (See generally *City of Kings Mountain* v. *Cline,* 19 N.C.App. 9 [198 S.E.2d 64, 66].) This it may not do. ■ Although just compensation requires payment of the fair market value of the property taken and severance damage to the remainder (*People* ex rel. *Dept. Pub. Wks.* v. *Romano,* 18 Cal.App.3d 63, 69 [94 Cal.Rptr. 839]), it does not require compensation for losses sustained by an owner such as lost business opportunities, expectations, or inconveniences (*Oakland* v. *Pacific Coast Lumber etc. Co.,* 171 Cal. 392, 398 [153 P. 705]; *City of Los Angeles* v. *Allen's Grocery Co.,* 265 Cal.App.2d 274, 280-281 [71 Cal.Rptr. 78]; see *Ventura County Flood Control Dist.* v. *Security First Nat. Bank, supra,* 15 Cal.App.3d 996, 1002-1003). In its most recent pronouncement on the subject, our high court in *Community Redevelopment Agency* v. *Abrams, supra,* 15 Cal.3d 813, posed and answered the question: "When and to what extent do the state and federal Constitutions require that the 'just compensation' to be paid upon the taking or damaging of private property for public use include payment over and above the fair market value of the property taken on account of business losses sustained by the condemnee as a result of the taking?" (*Id.,* at p. 816; fn. omitted.) In answering the question posed, the court declared: "Sixty years ago we answered this question in decisive fashion, and thereby stated the rule which presently applies in this state and, generally speaking, in all other jurisdictions of this nation. '[T]he real contention of appellant . . . [is] that business is property, and when the taking by the state or its agencies interferes with, impairs, damages, or destroys a business, compensation may be recov-

[14]Mr. McCune testified that in his opinion Sunny Crest was entitled to the fair rental value of the property for the two years because "Sunnycrest Dairy would have been making very substantial profits if this hadn't happened, and this is the best way I know how to answer your question. And we got nothing and we are even out the taxes and our business was stopped and our profits were stopped."

ered therefor. We are not to be understood as saying that this should not be the law when we do say that it is not our law. It is quite within the power of the Legislature to declare that a damage to that form of property known as business or the goodwill of a business shall be compensated for, but unless the constitution or the legislature has so declared, it is the universal rule of construction that an injury or an inconvenience to a business is *damnum absque injuria,* and does not form an element of the compensating damages to be awarded.' (*Oakland* v. *Pacific Coast Lumber etc. Co.* (1915) 171 Cal. 392, 398 [153 P. 705].)" (*Community Redevelopment Agency* v. *Abrams, supra,* 15 Cal.3d 813, 816-817, fn. omitted.)

■ We conclude that the jury verdict of $33,557 for "temporary severance damage" is unsupported by the evidence and is contrary to law. That amount should, therefore, be deducted from the judgment.

### III

#### MITIGATION OF DAMAGES

■ The district's next contention is that the court erred in permitting Sunny Crest to introduce evidence of "out-of-pocket expenses" incurred by it in bringing about a mobile home park development on the property. We agree.

Through Mr. McCune, Sunny Crest introduced evidence of so-called "out-of-pocket expenses" incurred to enable Sunny Crest to bring about the mobile home park lease. The expenses totaling $27,696.50 consisted of title fees, attorneys' fees, escrow fees and brokers' commissions in negotiating and consummating the lease with the mobile home park developer. The district's objection that such expenses were noncompensable was treated as a submitted motion to strike and following arguments, the motion was denied. Evidence of the expenses was offered and received on the theory that they were reasonably incurred in mitigation of damages either because they were made to hasten the mobile home park development and thereby minimized "temporary severance damages" or because they minimized permanent severance damages in that absent the expenditures the highest and best use in the after condition might have been different and resulted in a lower after condition market value. The evidence was inadmissible under either theory. The trial court erred in overruling the district's objection and in denying the motion to strike.

The principle of mitigation of damages does apply to condemnation proceedings and an owner whose property is being taken or damaged by a public entity is entitled to be compensated for expenses reasonably and in good faith incurred to minimize his compensable loss because to the extent that loss is minimized, the amount of the public entity's liability is reduced. (*Albers* v. *County of Los Angeles, supra,* 62 Cal.2d 250, 272.) *Albers* involved expenses incurred by an owner in a good faith attempt to minimize physical injury to his property, a loss for which he was entitled to be compensated. (*Id.*) In the previous section of this opinion, however, we pointed out that Sunny Crest's attempt to recover the fair rental value of the property during the two-year period as "temporary severance damage" constituted an attempt to recover a noncompensable business loss. Expenses incurred to mitigate a noncompensable business loss are manifestly noncompensable.

Nor were the expenses recoverable on the theory that absent the expenditures the highest and best use in the after condition might have been different and that the expenses, therefore, mitigated permanent severance damages. There was no evidence that the claimed expenses in any way altered the highest and best use of the land. Indeed, in conformity with the court's ruling at the outset of the trial that it would permit the appraisers to consider the reasonable probability of the acquisition of the adjoining 1.39 acres in arriving at their opinion of highest and best use, the appraisers on both sides agreed that the highest and best use of the remainder in the after condition was for a mobile home park. A piece of property can have only one fair market value for its highest and best use. Although the cost of developing a property to put it to its highest and best use may properly be a factor an appraiser may consider in arriving at his opinion of fair market value, we are aware of no authority, and none has been cited, permitting recovery of such costs on the theory espoused by Sunny Crest. Moreover, the expenses claimed by Sunny Crest were not in the nature of "development" costs; they were expenses incurred in negotiating the mobile home park lease.

Sunny Crest's attempt to justify allowance of the expenses on the ground they would have been recoverable under the Relocation Assistance Act (Gov. Code, § 7260 et seq.) is without merit.[15] Assuming

---

[15]Sunny Crest relies on Government Code section 7262 which provides as follows:
"(a) As a part of the cost of acquisition of real property for a public use, a public entity shall compensate a displaced person for his:

that the expenses incurred come within the scope of that act, benefits recoverable under it may not be asserted or proved in an eminent domain trial. (*City of Mountain View* v. *Superior Court,* 54 Cal.App.3d 72, 84 [126 Cal.Rptr. 358].) One asserting the benefits of that act must file a claim under the procedure therein provided. (Gov. Code, § 7266.)

"(1) Actual and reasonable expense in moving himself, family, business, or farm operation, including moving personal property.

"(2) Actual direct losses of tangible personal property as a result of moving or discontinuing a business or farm operation, but not to exceed an amount equal to the reasonable expenses that would have been required to relocate such property, as determined by the public entity.

"(3) Actual and reasonable expenses in searching for a replacement business or farm.

"(b) Any displaced person who moves from a dwelling who elects to accept payments authorized by this subdivision in lieu of the payments authorized by subdivision (a) shall receive a moving expense allowance, determined according to a schedule established by the public entity, not to exceed three hundred dollars ($300), and in addition a dislocation allowance of two hundred dollars ($200).

"(c) Any displaced person who moves or discontinues his business or farm operation who elects to accept the payment authorized by this subdivision in lieu of the payment authorized by subdivision (a), shall receive a fixed relocation payment in an amount equal to the average annual net earnings of the business or farm operation, except that such payment shall not be less than two thousand five hundred dollars ($2,500) nor more than ten thousand dollars ($10,000). In the case of a business, no payment shall be made under this subdivision, unless the public entity is satisfied that the business cannot be relocated without a substantial loss of patronage and is not a part of a commercial enterprise having at least one other establishment not being acquired, which is engaged in the same or similar business. For purposes of this subdivision, the term 'average annual net earnings' means one-half of any net earnings of the business, or farm operation, before federal, state and local income taxes, during the two taxable years immediately preceding the taxable year in which such business or farm operation moves from the real property being acquired, or during such other period as the public entity determines to be more equitable for establishing such earnings, and includes any compensation paid by the business or farm operation to the owner, his spouse, or his dependents during such two-year or such other period. To be eligible for the payment authorized by this subdivision, the business or farm operation shall make available its state income tax records, and its financial statements and accounting records, for audit for confidential use to determine the payment authorized by this subdivision. In the case of an outdoor advertising display, the payment shall be limited to the amount necessary to physically move or replace such display.

"(d) Whenever the acquisition of real property used for a business or farm operation causes the person conducting the business or farm operation to move from other real property, or to move his personal property from other real property, such person shall receive payments for moving and related expenses under subdivision (a) or (b) and relocation advisory assistance under Section 7261 for moving from such other property.

"(e) Whenever a public entity must pay the cost of moving a displaced person under paragraph 1 of subdivision (a), or subdivision (d) of this section:

"(1) The costs of such move shall be exempt from regulation by the Public Utilities Commission.

"(2) The public entity may solicit competitive bids from qualified bidders for performance of the work. Bids submitted in response to such solicitations shall be exempt from regulation by the Public Utilities Commission."

Because of the error in admitting evidence of the claimed expenses in mitigation, the jury made an award for the following: "The reasonable cost, if any, of defendants attempt to mitigate damages is $22,988." That sum must, therefore, be deducted from the judgment.

## IV

### INTEREST

The district's sole contention respecting interest is that if the "temporary severance damage" award is upheld, interest should not be awarded on the judgment for the period prior to January 1, 1976. Since we have decided that the "temporary severance damage" award should be stricken, the interest issue is moot.

### DISPOSITION

We order a limited reversal of the judgment with directions to the trial court to enter a new judgment by subtracting from the total award the sum of $33,557 awarded for "temporary severance damage" and the sum of $22,988 awarded for mitigation of damages. The judgment is otherwise affirmed.

The order awarding attorneys' fees is reversed for the limited purpose of reducing the amount of that award to the appropriate percentage of the amount of the judgment as modified.

Sunny Crest shall recover its costs on appeal.

Gardner, P. J., and Kaufman, J., concurred.

Petitions for a rehearing were denied March 16, 1978, and respondent's petition for a hearing by the Supreme Court was denied April 19, 1978.