CITY OF ST. LOUIS (Plaintiff), Appellant,

v.

Frederick MOEHLENHOFF (Defendant), Respondent,

and

Joseph Leo Levasseur and LaVerne M. Levasseur, His Wife, (Defendants), Appellants.

Nos. 30037, 30038.

St. Louis Court of Appeals.

Missouri.

March 17, 1959.

Charles J. Dolan, Acting City Counselor, Oliver T. Johnson, Andrew J. Reis, Associate City Counselors, St. Louis, for City of St. Louis, appellant.

James E. Crowe, St. Louis, for Joseph and LaVerne Levasseur, appellants.

Ivon Lodge, St. Louis, for respondent.

DOERNER, Commissioner.

This case comes to the writer on reassignment. It was initiated as an action by the City of St. Louis for the assessment of damages and benefits by reason of a change in the grade of a portion of Robert Avenue, from the west line of Sharp Avenue to the east line of Morganford Road, a distance in excess of 1,600 feet. Two appeals are involved, which were briefed and argued jointly, one by the City, and the other by Joseph Leo Levasseur and LaVerne M. Levasseur, his wife.

By ordinances approved on June 25, 1954 and July 1, 1954, the City established the new grade of Robert Avenue, defined the district to be benefited, directed its Board of Public Service to let a contract for the work to be done, authorized the issuance of special tax bills in payment of such work, and directed its City Counselor to institute this action to have the damages to the abutting property ascertained and the special benefits thereto assessed. Pursuant thereto this action was instituted on October 15, 1954, naming the defendant Moehlenhoff (hereafter referred to as defendant) as one of the persons who owned or claimed an interest in a parcel of abutting property. What answer, claim, or other pleading the defendant may have filed, if any, is not shown by transcript.

Before any further action had been taken in this suit, the City proceeded to have the grading and paving done and upon its completion approved and accepted the construction on December 28, 1954. Subsequently, on March 4, 1955, this cause was referred to the City's Permanent Condemnation Commission, which, after affording the defendant and all other interested parties due notice and an opportunity to be heard, filed their report with the court below on June 14, 1955. In their report the commissioners assessed the damages sustained by the defendant at $10,000 and that of all other abutting owners, because of recorded grade waivers, at nothing. Both the City and the defendant filed exceptions to the award,

the City contending that the damages were grossly excessive and defendant claiming that the amount allowed him was grossly inadequate.

These exceptions came on for hearing on February 14, 1957. At that time the City took the position, not that the award of damages was excessive, but that the commissioners had failed to assess against the property the special benefits which had resulted from the change of grade. Defendant dismissed its exceptions to the award, and objected to the City's contention on the grounds that it was not within the purview of the City's exceptions. Subject to this objection, the trial court heard evidence pro and con on the issue, and on March 25, 1957 overruled the City's exceptions. Thereafter an ordinance was adopted by the City appropriating the sum of $10,000 for the payment of the damages, and on August 8, 1957, the City paid that amount into the registry of the court. On the same day the trial court entered what is referred to in the record as a final judgment, in which the court, after finding that the required ordinances and other procedural steps had been taken for the establishment of the new grade of Robert Avenue, found that the actual damages sustained by the defendant, " * * * the party owning or claiming an interest in and to the property described in Award No. 1 of said Commissioners' report, are $10,000.00, to which sum said party is entitled as aforesaid, which sum and award the plaintiff city herewith pays into the registry of the court to the use of the party entitled thereto * * *."

On August 21, 1957, defendant filed his application for the payment to him of said sum of $10,000. In his application defendant alleged that the grade of the street had been changed and the street paved several months before the Commissioners had made their award; that at that time he was the owner of the fee simple title to the abutting property; that he had been required to pay a special tax bill in excess of $10,000 for the paving of the street; and prayed that an order be entered directing the clerk to

pay to him the money held in the registry of the court. The City, on September 17, 1957, likewise filed an application, stating that on February 1, 1957, "the owners of part of said Parcel No. 1 filed and recorded to [sic] the Office of the Recorder of Deeds of the City of St. Louis a plat of a subdivision entitled 'Viola Place' and in said plat the owners of said property waived any damages by reason of changing the grade of fifty feet of said subdivision abutting on Robert Avenue; that by reason of said waiver plaintiff is entitled to the same proportion of the grade damages awarded herein as the fifty feet bears to 657.25 feet, to wit, the sum of $760.74."

The respective applications of the defendant and the City for distribution of the fund in the registry of the court came on for hearing on September 27, 1957. At that time Joseph Leo Levasseur and LaVerne M. Levasseur, his wife (hereinafter called the intervenors), appeared and filed a written motion, accompanied by a petition for partial distribution, asking leave to intervene. In their petition they pleaded that on May 20, 1957, they had become the owners of part of Parcel No. 1; that their land abutted on Robert Avenue a distance of 107.42 feet; and that they were thereby entitled to the distribution to them of a proportionate part of the $10,000 award, or $1,634.40. The trial court permitted the Levasseurs to intervene, subject to defendant's objection, and proceeded with the hearing.

The evidence showed that at the time the grading and paving was done, and until November 7, 1956, defendant owned all of the land in question, about 6.68 acres, which abutted on Robert Avenue for a distance of 667.25 feet. By a general warranty deed of that date defendant conveyed to Frederick O. Whaley and Viola Whaley, his wife, a part thereof containing 3.8 acres, which fronted on Robert Avenue for a distance of 257.42 feet. As part of the purchase price the defendant took back a deed of trust on the property, securing a note, the amount of which does not appear in the record. The Whaleys subdivided this tract,

naming it Viola Place, and on February 1, 1957, filed with the Recorder of Deeds a plat of the subdivision. The plat introduced in evidence showed that there was but one street in the subdivision, called "Whaley Place." As the owner and holder of notes secured by the deed of trust defendant executed a certificate on the plat by which he joined in the creation of the subdivision and released from the lien created by the deed of trust " * * * the easements and dedications as shown on the above plat." The dedication referred to, executed by the Whaleys, was as follows:

"The undersigned owners of the tract of land described in the foregoing surveyor's certificate have caused said tract to be surveyed and subdivided in the manner shown on the above plat, and shall hereafter be known as 'Viola Place'.

"Whaley Place is hereby dedicated to public use forever for street purposes. The right to establish grades on said dedicated street is hereby granted to the City of St. Louis, Missouri, and all claims for damages which may arise by reason of changing the present surface of said street to conform to said grades are hereby waived.

"The easements shown on the above plat are hereby granted to the City of St. Louis, Missouri, and the Metropolitan St. Louis Sewer District, as their interests may appear, for the purpose of installing and maintaining sewers and public utilities in, under, or over said easements.

"All lots in the above subdivision shall be sold subject to the building lines shown on this plat.

"In Witness Whereof, We have hereunto set our hands this the 7th day of December, 1956.

"Viola Whaley    Frederick O. Whaley
Owners"

The evidence further showed that thereafter, on May 28, 1957, by a warranty deed, the Whaleys conveyed Lot 14 of Viola Place to the intervenors. According to the plat the south line of Lot 14 abuts Robert Avenue for a distance of 107.42 feet.

By its judgment the trial court denied the respective applications of the City and the intervenors for the distributions to them of the amounts each sought; sustained the petition of defendant; and directed that the entire sum of $10,000 be paid to him. After unavailing motions for a new trial both the City and the intervenors, as stated, have appealed.

In their joint brief the City and the intervenors first complain of the action of the trial court in sustaining defendant's objections to the introduction of certain exhibits offered by them. Since these are appeals from a matter tried before the court alone, we have, as indicated by the foregoing statement of facts, considered the entire record.

■ While he made no motion to that effect, defendant in his brief urges us to dismiss the appeals of the City and the intervenors. He contends that the judgment of August 8, 1957, was a final, personal judgment in favor of defendant; that the motions by the City and the intervenors to have portions of the money in the registry of the court paid to them were attempts on their part to have the court amend the judgment; that since neither of such motions were filed until more than thirty days had elapsed from the entry of the judgment, the court had lost jurisdiction to amend the judgment; and that we therefore do not have jurisdiction to entertain their appeals. The fallacy in this argument is in the premise that the judgment was in personam. In actions of this nature the judgment is in rem, not in personam. City of St. Louis v. Koch, 169 Mo. 587, 70 S.W. 143; State ex rel. Scott v. Trimble, 308 Mo. 123, 272 S.W. 66; City of Moberly v. Hogan, 317 Mo. 1225, 298 S.W. 237. Controversies frequently arise in litigation of this kind between lessors and lessees, mortgagors and mortgagees, vendors and purchasers, and others, regarding the apportionment or distribution of the fund held in the registry of the court. It has long been held that under such circumstances the court has the authority to require the rival claimants to interplead for the fund, and to determine to whom it should rightfully be paid. Ross v. Gates, 183 Mo. 338, 81 S.W. 1107; State ex rel. McCaskill v. Hall, 325 Mo. 165, 28 S.W.2d 80, 69 A.L.R. 1256; St. Louis Housing Authority v. Evans, Mo.Sup., 285 S.W. 2d 550. We must therefore decline to dismiss the appeals.

■ Turning to the merits of the case, it is the theory of the intervenors that since only consequential damages are involved, the right to the award became fixed when the money was paid into the registry of the court on August 8, 1957; and that inasmuch as they owned a part of the abutting property on that date they are therefore entitled to a proportionate share of the award. They contend, in short, that even though Robert Street was graded and approved at the time defendant owned all of the property, his right to damages did not become vested and there was no "taking" until the City paid the award into court. We cannot agree. It must be admitted that in the usual case involving the exercise of the power of eminent domain, where land is appropriated, there is not complete uniformity as to when the "taking" occurs. Thus it has recently been held that such taking occurs on the day the Commissioners file their report, at least for the purpose of computing interest. State ex rel. State Highway Commission v. Galloway, Mo. App., 292 S.W.2d 904, affirmed Mo.Sup., 300 S.W.2d 480. But the conclusion to be drawn from State ex rel. State Highway Commission v. Deutschman, 346 Mo. 755, 142 S.W.2d 1025 is that there is no "taking" until the condemner actually enters upon the land. There can be no doubt, however, about the statute requiring the damages to be assessed, and the amount of the assessment paid into court, before the actual entry

by the condemner upon the land appropriated. Section 523.040 RSMo 1949, V.A.M.S.; St. Louis, Oak Hill & Carondelet Ry. Co. v. Fowler, 113 Mo. 458, 20 S.W. 1069; Holmes v. Kansas City, 209 Mo. 513, 108 S.W. 9, 1134. In any event, the general rule is that damages for the taking or for the injury to land belong to the one who owns the land at the time of the taking or injury, and do not pass to a subsequent grantee of the land except by a provision to that effect in the deed, or by a separate assignment. 29 C.J.S. Eminent Domain § 202; Hilton v. City of St. Louis, 99 Mo. 199, 12 S.W. 657; Keith v. Bingham, 100 Mo. 300, 13 S.W. 683; Turner v. Missouri Pacific Ry. Co., 130 Mo.App. 535, 109 S.W. 101; State ex rel. State Highway Commission v. Houchens, Mo.App., 235 S.W.2d 97.

In this case, of course, there was no appropriation of the land in the sense of a physical entry and occupation. As all the parties recognize, here only consequential damages are involved, for the City injured but did not appropriate any of the defendant's land and consequential damages for damaging private property for public use need not be paid in advance. State ex rel. State Highway Commission v. Lynch, Mo. Sup., 297 S.W.2d 400; Hill-Behan Lumber Co. v. Skrainka Const. Co., 341 Mo. 156, 106 S.W.2d 483. But, as to the City of St. Louis, consult Tremayne v. City of St. Louis, 320 Mo. 120, 6 S.W.2d 935. Be that as it may, the appropriation, in a legal sense, occurred at the time Robert Avenue was regraded and paved. It was then that the abutting land was injured—not when the Commissioners' report was filed, almost six months after the work was completed, and long before the City paid the award into court. And it was then that the quantum of that injury became fixed, for the measure of damages for altering the grade was the difference in the value of the land immediately before and after the alteration. Nestlehut v. City of De Soto, Mo. App., 202 S.W. 425; Ketchum v. City of Monett, 193 Mo.App. 529, 181 S.W. 1064.

The owner of the abutting property at the time it was injured was the defendant. The deeds from the defendant to the Whaleys, and from the latter to the intervenors, are in the usual form, and contain no assignment of defendant's claim for damages. And in accordance with the foregoing general rule that damages for the injury to land belong to the one who owns the property at the time the injury occurs, and does not pass to his grantee, unless otherwise provided by his conveyance, we must hold that the intervenors were not entitled to any part of the damages paid into court. 18 Amer.Jur., Eminent Domain, Sec. 231; Gillam v. City of Centralia, 14 Wash.2d 523, 128 P.2d 661; Newman v. Bailey, 124 W.Va. 705, 22 S.E.2d 280; Putnam Furniture Building, Inc. v. Commonwealth, 323 Mass. 179, 80 N.E.2d 649; Robinson v. Central Nebraska Public Power & Irrigation Dist., 146 Neb. 534, 20 N.W.2d 509; Steinle v. City of Cincinnati, 142 Ohio St. 550, 53 N.E.2d 800; Kakeldy v. Columbia & P. S. R. Co., 37 Wash. 675, 80 P. 205. Since the intervenors bought their lot long after the property was injured, it is fair to assume that they took its diminished value into account at the time of their purchase. Whitecotton v. St. Louis & Hannibal Ry. Co., 104 Mo.App. 65, 78 S.W. 318.

As to the claim of the City, its theory is that by joining in the waiver which appears on the plat establishing Viola Place, and dedicating the street called Whaley Place, the defendant thereby waived any damages accruing to the 50 foot width devoted to that street. What we have said regarding the claim of the intervenors is equally applicable to the claim of the City, for the dedication was not made nor the waiver executed until long after the City had graded and paved Robert Avenue, and at a time when the defendant's land had already been damaged. Furthermore, as the most casual reading of the dedication would indicate, the waiver was of damages "which may arise by reason of changing the present surface of *said street*"—which obviously referred to Whaley Place, the only street mentioned,

and not to the injury resulting from the grading of Robert Avenue.

For the reasons stated it is recommended that the judgment be affirmed.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of the court.

Accordingly, the judgment of the circuit court is hereby affirmed.

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.