COUNTY OF CLARK, a Political Subdivision of the State of Nevada, and CLARK COUNTY FLOOD CONTROL DISTRICT, a Governmental Subdivision of the State of Nevada, a Body Corporate and Politic and a Quasi-corporation, Appellants, *v.* ALBERT O. POWERS, AFTON M. POWERS, RUFUS WAL-LACE, ETHEL M. WALLACE, LAWRENCE M. LOWE, BONNIE L. LOWE, GEORGE F. RODRI-GUES, ARLEEN D. RODRIGUES, JOSEPH F. RODRIGUES, and CAROLINE V. RODRIGUES, Respondents.

No. 10879

June 4, 1980                                        611 P.2d 1072

[Rehearing denied July 9, 1980]

*Robert J. Miller,* District Attorney, and *Charles H. Weger,* Deputy District Attorney, Clark County, for Appellants.

*Leavitt & Leavitt,* Las Vegas, for Respondents.

## OPINION

By the Court, MOWBRAY, C. J.:

In this action, sounding both in inverse condemnation and in tort, the district court found that the County of Clark and the

Clark County Flood Control District (hereinafter collectively referred to as "the County"), had, by acting in conjunction with various private parties,[1] caused large amounts of water to be cast upon the property of the Powers, the Wallaces, and the Lowes.[2] The County appeals from the judgment awarding just compensation and damages. We affirm.

During the 1950's and early 1960's, respondents acquired various properties in Clark County, and developed those lands for residential use. The land was desert terrain, sandy and porous, and sloped gently downhill in an easterly direction. An ephemeral stream or wash, one which flows only in direct response to precipitation in the immediate locality, traversed the Powers parcel. The land immediately west of the Powers and Lowe parcels was sufficiently porous to absorb and dissipate most rain waters. Heavy rains, however, would collect in the low, surrounding areas, and would follow the natural terrain, entering the Powers and Lowe properties at the approximate border between the two properties. Due to the gentle slope, these waters would flow, if at all, at a slow current, and would be naturally dissipated and absorbed. Flooding was rare. This ephemeral stream paralleled a much larger wash, the Flamingo Wash, which runs south of the instant parcels. Prior to 1967, the flow, if any, of rain, nuisance, and flood waters did not damage the respondents' parcels, nor did it restrict the use and development of the land.

Commencing in 1967, the development of the lands west of respondents' parcels resulted in the alteration, diversion, channeling, and acceleration of rain, nuisance, underground, and flood waters onto respondents' properties. The County participated actively in the development of these lands, both by its own planning, design, engineering, and construction activities and by its adoption of the similar activities of various private developers as part of the County's master plan for the drainage and flood control of the area.

As part of the County's master plan, the land at the intersection of Desert Inn Road and Eastern Avenue was filled, leveled, graded, compacted, and paved. The County elevated Topaz Street, which divided the developed properties from the Lowe and Powers parcels, by four feet, and raised the land

[1]The respondents settled their dispute with these private parties, various land developers, prior to trial. The parties have stipulated that any judgment against the County shall be offset by a pro rata allocation of the settlement. The propriety of the settlement is not before this Court.

[2]Additional party plaintiffs, the Rodrigueses, were awarded damages by the district court, but subsequent to trial, settled their dispute with the County. That aspect of the judgment is therefore no longer before this Court.

west of Topaz Street to a new level. Leach lines and beds were constructed to collect and divert waters from a grocery store site, channeling those waters to a drainage pipe maintained by the County and from there to a sump hole at Desert Inn Road and Topaz Street, where the waters were collected in various culverts and discharged onto the Lowe and Powers parcels.

Similarly, Desert Inn Road and its curbs and gutters were designed specifically to divert and channel waters, which would normally have drained into the large Flamingo Wash, onto the Lowe and Powers parcels. In addition, the County entered, without permission, onto the Lowe property, and built, without authorization, a concrete and rock berm.

The cumulative effect of these activities was to increase and accelerate the flow of waters through the ephemeral stream, to divert waters normally draining into the Flamingo Wash into the ephemeral stream, and to alter and divert the natural course of the ephemeral stream; the waters—as increased, accelerated, and diverted—cascaded over the entire length of the Powers parcel. By 1975, and continuing through the early part of 1976, the Powers parcel was deluged by a constant flow of water. Subsequent to the installation of a large drainpipe in the early part of 1976, the property was subjected to temporary, but frequent and inevitable, flooding. Once the Powers and Lowe parcels would become saturated, the waters entered the Wallace parcel as well. The collecting waters interfered seriously with repondents' use and enjoyment of their land, and became a breeding ground for stench, mosquitoes, and disease.

Respondents filed this suit in the district court, based upon theories of inverse condemnation, nuisance, and trespass, seeking to be made whole for these injuries. After receiving evidence and testimony throughout an eleven day trial, reviewing a quantity of topographical maps, and making an on-site inspection of the relevant properties, the trial court, employing the reasonable use rule as applied to the drainage of surface waters, concluded that the County had unreasonably injured respondents' lands; the court made an appropriate award of damages based on the nuisance and trespass claims. In addition, the court found that the County had taken the Powers parcel in its entirety: the property no longer had a practical use other than as a flood channel.[3] The court awarded just compensation. The court found as well that .247 acres of the Lowe

---

[3]It has long been established that a taking occurs "where real estate is actually invaded by superinduced additions of water . . . so as to effectually destroy or impair its usefulness," Pumpelly v. Green Bay Company, 80 U.S. (13 Wall.) 166, 181 (1871), and the result is no different when property is subjected to intermittent, but inevitable flooding which causes substantial injury, United States v. Cress, 243 U.S. 316, 328 (1917).

parcel, used by the County to construct a concrete berm, had been taken, and awarded just compensation. This appeal followed.

On appeal, the County advances two arguments requiring discussion: (1) the district court erred both in its adoption and application of the reasonable use rule; and (2) the County should be immune from liability for damages caused by what it terms "urbanization". These, and the County's remaining contentions, are without merit.

1. In adjudicating the competing rights and interests of respondent landowners and the County with regard to the drainage of surface waters, the district court, in the instant case, employed the reasonable use rule. *See* Armstrong v. Francis Corporation, 120 A.2d 4, 8–10 (N.J. 1956). This rule of reason provides that in effecting a reasonable use of land for a legitimate purpose, a landowner or user, acting in good faith, may drain surface waters and cast them on a neighbor's land if: (a) the injurious flow of waters is reasonably necessary for drainage; (b) reasonable care is taken to avoid unnecessary injury; (c) the benefit to the drained land outweighs the gravity of harm inflicted upon the flooded land; (d) the drainage is accompanied, where practicable, by the reasonable improvement and aiding of normal and natural systems of drainage in accordance with their reasonable carrying capacity; and (e) where no natural systems of drainage are available, the drainage is accomplished by the use of a reasonable, artificial system of drainage. Enderson v. Kelehan, 32 N.W.2d 286, 289 (Minn. 1948); *see Armstrong,* 120 A.2d at 8–10; Restatement (Second) of Torts, §§ 827, 828, 850, and 850A, and Introductory Notes to § 850 (1977). The County contends that the adoption of the reasonable use rule was error, arguing that the rule will unduly restrict the development of land and that it affords landowners little or no predictability concerning the permissible uses to which their lands may be put. In lieu of the rule of reason, the County urges this Court to adopt the natural flow rule which places a natural servitude upon lower lands for the drainage of surface waters from upper lands, as long as the natural course of the waters is not diverted and the natural flow is not increased by waters not naturally flowing in that course. *See* Young v. Huffman, 90 N.W.2d 401, 402 (S.D. 1958).

The question of which law to apply to the drainage of surface waters in this context, which entails a judgment concerning the proper allocation of costs incident to the

transformation of rural or semi-rural areas into urban and suburban communities, is one of first impression in this state. Our prior cases, however, have enunciated three central principles: one, the law of water rights must be flexible, taking notice of the varying needs of various localities, Reno S. Works v. Stevenson, 20 Nev. 269, 280, 21 P. 317, 321 (1889); two, a landowner may make reasonable use of his land as long as he does not injure his neighbor, Boynton v. Longley, 19 Nev. 69, 74, 6 P. 437, 439 (1885); and three, a landowner should not be permitted to make his land more valuable at the expense of the estate of a lower landowner, *id.*

The law concerning the drainage of surface waters must necessarily take into account a variety of factors: the nature of the land, soil, and terrain; the types of surface waters involved; the availability of natural drainways; the feasibility of artificial drainage systems; the uses to which the land has been and will be put; the benefit and the harm produced by the drainage; and a host of environmental and social concerns. *See generally* V Clark, *Waters and Water Rights,* § 450.3 *et seq.* (1972 & Supp. 1978). The reasonable use rule allows for the careful consideration of each of these public and private concerns; growth and urbanization are not unduly restricted, but merely tempered with elements of order, planning and reasonableness. Butler v. Bruno, 341 A.2d 735, 740–41 (R.I. 1975); *see also Armstrong,* 120 A.2d at 10; V Clark, *Waters and Water Rights* at § 457.5. By contrast, the natural flow rule, restricted, by definition, to a rigid application of the laws of nature and the boundaries of natural water courses, is ill-suited to the complexities of urban growth and expansion. *See generally Reno S. Works,* 20 Nev. at 280, 21 P. at 321; Howard v. City of Buffalo, 105 N.E. 426, 432 (N.Y. 1914) (*per* Cardozo, J.).

We find as well that the economic costs incident to the expulsion of surface waters in the transformation of rural and semi-rural areas into urban and suburban communities should not be borne solely by adjoining landowners. *Armstrong,* 120 A.2d at 10; *Butler,* 341 A.2d at 740–41; *cf.* Boynton v. Longley, 19 Nev. at 74, 6 P. at 439 (a landowner should not enrich his estate at the expense of his neighbor's). Rather, landowners, developers, and local officials must take into account the full costs of development to the community prior to the implementation of their plans. *Id.* Absent such prior planning, the reasonable use rule allows for a more equitable allocation of the incidental

economic costs, consistent with our concepts of social progress and the common well-being, than does the natural flow rule. *Id.*

Finally, we cannot agree with the County that the reasonable use rule is fatally unpredictable. Our review of the case law and literature reveals that the natural flow rule does not provide more predictable results than the reasonable use rule. *See Butler,* 341 A.2d at 741. In addition, we refuse to elevate an abstraction, such as "predictability", into a judicial pardon for unreasonable conduct. *Id.*

For the above reasons, we hold that the district court correctly adopted the reasonable use rule in adjudicating the competing rights of respondent landowners and the County with regard to the drainage of surface waters.

Applying the reasonable use rule to the instant case, the district court carefully considered all relevant factors. The court found that the County had not taken reasonable care to avoid the substantial injuries to respondents' property, that the gravity of the harm caused by the drainage outweighed the benefits conferred by it, that the County could have avoided the harm by improving and complementing the natural system of drainage, and that the County could have utilized a pre-existing, alternative system of drainage, the Flamingo Wash, to avoid much of the injury. The County's argument that these findings are not supported by substantial evidence simply because the record contains conflicting evidence is not well taken. Tavel v. Olsson, 91 Nev. 359, 361, 535 P.2d 1287, 1288 (1975). The district court's determination of unreasonableness will not be disturbed.

2. The County argues, relying on Baldwin v. City of Overland Park, 468 P.2d 168 (Kan. 1970), that it is not liable for any injuries caused by what it terms "urbanization" or rapid economic growth. We cannot agree.

The district court found, and the record supports, that the injuries to respondents' properties were caused by the County's unreasonable acts, and not merely by the intangible and irresistible forces of urbanization. The County does not offer any reason why its actions in the instant case, found to be unreasonable by the district court, should be treated any differently

than other examples of tortious conduct on the part of a governmental entity. *See* NRS 41.031(1); *compare* Crucil v. Carson City, 95 Nev. 583, 600 P.2d 216 (1979); Harrigan v. City of Reno, 86 Nev. 678, 475 P.2d 94 (1970). We therefore reject the *Baldwin* concept of limited sovereign immunity, and choose to follow the view, adopted in a majority of jurisdictions, that a governmental entity's substantial involvement in the development of private lands which unreasonably injures the property of others is actionable. *See, e.g.,* Masley v. City of Lorain, 358 N.E.2d 596 (Ohio 1976); *see also* Archer v. City of Los Angeles, 119 P.2d 1 (Cal. 1941); Anderson v. United States, 174 F.Supp. 945 (Ct.Claims 1959).

The County further argues, for the first time on appeal, that its actions in the instant case were discretionary, within the meaning of NRS 41.032(2), and therefore do not subject it to liability. This defense was neither pleaded nor raised below, and is not therefore properly before this Court. Hennessey v. Price, 96 Nev. 33, 604 P.2d 355 (1980); *see* Stewart v. United States, 199 F.2d 517 (7th Cir. 1952).

Since the district court applied the correct rule of law, and its findings are supported by substantial evidence, the judgment is affirmed in all respects.

THOMPSON, GUNDERSON, MANOUKIAN, and BATJER, JJ., concur.