DAVID ARGIER, TOM ARGIER, NEVCAN DEVELOPMENT, LTD., AND CANEV DEVELOPMENT, LTD., APPELLANTS, v. NEVADA POWER COMPANY, A NEVADA CORPORATION, RESPONDENT.

No. 28528

February 26, 1998                              952 P.2d 1390

*Kermitt L. Waters,* and *James Leavitt,* Las Vegas, for Appellants.

*Steven F. Smith,* Las Vegas, for Respondent.

---

## OPINION

*Per Curiam:*

Respondent, Nevada Power Company ("NPC"), filed a complaint for an easement across land owned by appellants, David Argier, Tom Argier, Nevcan Development, Ltd., and Canev Development, Ltd. (the "Argiers"). Pursuant to a district court order granting immediate occupancy, Nevada Power Company installed power lines along the easement. Due to a dispute as to the value of the easement, Nevada Power Company filed an action to determine the value of the property. Prior to receiving compensation, and prior to the trial to determine the value of the easement, the Argiers sold the property at issue to Clark County. Nevada Power subsequently filed a motion to dismiss, claiming that the conveyance of the property to the county terminated its duty to pay the Argiers just compensation for the easement. The district court granted this motion. The Argiers appeal the district court's dismissal.

The only issue this court must decide is whether the Argiers' conveyance of their land to Clark County extinguished their right to just compensation. According to treatises discussing the sub-

ject and cases from other jurisdictions, just compensation should be paid to the person who owns the property at the time of the taking. For example, 3 Julius Sackman, *Nichols on Eminent Domain* § 5.01[5][d] (1997) states:

> It is well settled that when there is a taking of property by eminent domain in compliance with law, it is the owner of the property at the time of the taking who is entitled to compensation. Consequently, if the parcel of land from which the taking is made changes hands after the taking has occurred but before the compensation has been paid, *the right to receive the compensation does not run with the land, but remains a personal claim of the person who was the owner at the time of the taking, or his representatives.*

(emphasis added); *accord* Danforth v. United States, 308 U.S. 271 (1960); United States v. Dow, 357 U.S. 17 (1958); Toles v. United States, 371 F.2d 784 (10th Cir. 1967); City of Los Angeles v. Ricards, 515 P.2d 585 (Ca. 1973); Majestic Heights Co. v. Board of County Comm'rs., 476 P.2d 745 (Colo. 1970); Enke v. City of Greenly, 504 P.2d 1112 (Colo. Ct. App. 1972); City of Albuquerque v. Chapman, 419 P.2d 460 (N.M. 1966).

Given this general rule, the issue we must determine is when the taking occurs. NPC argues that the taking does not occur until the government or agency receives title in a final order of condemnation. The Argiers argue that the taking occurs at the point of physical occupation of the subject property.

This issue is addressed in 3 Julius Sackman, *Nichols on Eminent Domain* § 5.02[3] (1997):

> If a parcel of land is sold after a portion of it has been taken *or after it has been injuriously affected by the construction of some authorized public work,* the right to compensation, constitutional or statutory, does not run with the land but remains a personal claim in the hands of the vendor, unless it has been assigned by special assignment or by a provision in the deed . . . . Conversely, if the land is sold after condemnation proceedings have been instituted but before the *punctum temporis[1] of the taking, the purchaser, and not the vendor, is entitled to the compensation.*

(Emphasis added.) A similar statement of this general rule is found in 29A C.J.S. *Eminent Domain* § 194 (1992). This section provides:

---

[1] *Punctum temporis* is defined as "A point of time; an indivisible period of time; the shortest space of time; an instant." Black's Law Dictionary (4th ed. 1951). Nichols also states that the *punctum temporis* is the time at which the right of the public to the land and the right of the owner to the compensation become vested. 3 Julius Sackman, *Nichols on Eminent Domain* at § 5.01[4].

> Damages for the *taking of land or for the injury to the land* not taken belong to the one who owns the land at the time of the *taking or injury,* and they do not pass to a subsequent grantee of the land except by a provision to that effect in the deed or by separate assignment.

*Id.* (emphasis added).

In United States v. Dow, 357 U.S. 17 (1958), the Supreme Court addressed this issue on very similar facts. There, the government had obtained a judgment of immediate possession for an easement and subsequently laid a pipe-line across the owner's property. Prior to the government paying just compensation for the easement, the owner sold the property to Dow. As in the instant case, the government deposited a compensation award with the court and a dispute arose as to who was entitled to the compensation—Dow or the original owner. The Court held that when the government enters into possession of property prior to *acquiring title,* it is the former event which constitutes the taking. *Dow,* 357 U.S. at 22. Therefore, the person who owned the subject land at the time the government took possession was entitled to compensation. *Id.*

In Brooks Investment Co. v. City of Bloomington, 232 N.W.2d 911 (Minn. 1975), the Minnesota Supreme Court dealt with a similar issue. The city had taken an easement over property which the owner sold prior to receiving just compensation. As in the instant matter, the issue for the court was whether the original landowner or the purchaser was entitled to the compensation award.[2] The court stated that where the government takes possession of property so as to deprive the original owner of possession prior to the sale, the original owner is entitled to the compensation award. *Id.* at 918.

The court explained the rationale for this general rule. When the government interferes with a person's possession of his/her property, the owner loses an interest in that property. The award of just compensation is a substitute for that lost interest in the property. When the owner sells what remains of her property, she does not also sell the right to compensation. If she did, the original owner would suffer a loss and the purchaser would receive a windfall. *Id.* Nearly every jurisdiction which has considered this issue has agreed with *Brooks. See, e.g.,* Toles v. United States, 371 F.2d 784 (10th Cir. 1987); Enke v. City of Greenley, 504 P.2d 1112 (Colo. 1972); Majestic Heights Co. v.

---

[2]NPC argues that the *Brooks* case is inapplicable to the present situation because it was an inverse condemnation action and this is a direct condemnation action. However, this court has held that the same rules that govern direct condemnation actions apply in inverse condemnation actions as well. County of Clark v. Alper, 100 Nev. 382, 685 P.2d 943 (1984).

Board of County Comm'rs., 476 P.2d 745 (Colo. 1970); City of Albuquerque v. Chapman, 419 P.2d 460 (N.M. 1960).

General principles of constitutional law also support the conclusion that NPC effected a taking once it entered upon the land. In Nollan v. California Coastal Commission, 483 U.S. 825 (1987), the Supreme Court addressed the issue of what constitutes a taking. There, the Court explained that where governmental action has caused a permanent physical occupation of the land, the Court has consistently found a taking to the extent of the occupation. *Id.* at 831 (citing Loretto v. Teleprompter Manhattan CATV Corp., 485 U.S. 419, 443 (1982)). Furthermore in Yee v. City of Escondido, 503 U.S. 519, 527 (1991), the Court stated that the government effects a taking when it requires the landowner to submit to the physical occupation of her land. Thus, where there is an entry into possession by the condemning authority prior to formal commendation proceedings, the taking which occurs at the entry must be considered the taking for all purposes. *Brooks,* 232 N.W.2d at 919.

NPC argues that in order to preserve their right to just compensation, the Argiers were required to reserve that right in their deed or contract of sale to the county. Sources discussing the issue of whether one must reserve the right to compensation in a deed or contract of sale state otherwise. It is generally presumed that the right to compensation remains with the vendor of the land unless the contract of sale specifically provides to the contrary. *See* 29A C.J.S. *Eminent Domain* § 194 (1992) (citing City of St. Louis v. Moehlenhoff, 322 S.W.2d 155 (1959) and Roberts v. Northern Pac. R. Co., 158 U.S. 1 (1895)); 3 Julius Sackman, *Nichols on Eminent Domain* § 5.21 (1997). Accordingly, we conclude that the Argiers were not required to reserve the right to any compensation award in their deed or contract of sale.

NPC next argues that the Argiers are not entitled to just compensation because the Argiers' right to compensation did not vest prior to their sale to the county. Citing again to *Nichols,* NPC argues that the right to compensation does not vest until a compensation award is confirmed and a judgment of condemnation is finally entered.

We hold that equity mandates vesting occurs when the condemning agency enters into possession of the landowner's property. To find that no taking occurred, even though the condemning agency was in possession of the land, would be to

circumvent the constitutional standards for what constitutes a taking.

We therefore hold that the Argiers' right to compensation vested when NPC entered their property. Since this vesting occurred prior to the sale to the county, the Argiers are entitled to that compensation.

Accordingly, we reverse the order of the district court and remand this case for further proceedings consistent with this opinion.