103 P.3d 1 (2004)
The STATE of Nevada, DEPARTMENT OF TRANSPORTATION, Appellant/Cross-Respondent,
v.
Stuart A. COWAN and Barbara L. Cowan, D/B/A Lou's Texaco, Respondents/Cross-Appellants.
No. 39188.
Supreme Court of Nevada.
December 17, 2004.
*2 Brian Sandoval, Attorney General, Brian R. Hutchins, Chief Deputy Attorney General, and Liesl K. Freedman, Senior Deputy Attorney General, Carson City, for Appellant/Cross-Respondent.
Law Offices of Kermitt L. Waters and James Jack Leavitt, Brian C. Padgett, Charles E. Springer, and Kermitt L. Waters, Las Vegas, for Respondents/Cross-Appellants Stuart and Barbara Cowan, d/b/a Lou's Texaco.
A. Grant Gerber & Associates and A. Grant Gerber, Elko; Pacific Legal Foundation and J. David Breemer and James S. Burling, Sacramento, California, for Amicus Curiae Pacific Legal Foundation.
David J. Roger, District Attorney, and Robert J. Gower, Deputy District Attorney, Clark County, for Amicus Curiae Clark County.
Jason S. Cook, Las Vegas; Defenders of Property Rights and Nancie G. Marzulla, Washington, D.C., for Amicus Curiae Defenders of Property Rights.
Jones Vargas and Ann Morgan, Reno, for Amicus Curiae Airport Authority of Washoe County.
Andrew A. List, Carson City, for Amici Curiae Nevada Association of Counties and Nevada League of Cities and Municipalities.
Before the Court En Banc.[1]

OPINION
SHEARING, C.J.
This is an appeal and cross-appeal from a judgment awarding damages to the lessee of property that was condemned by the Nevada Department of Transportation (NDOT). The lessees, Stuart A. and Barbara L. Cowan, *3 appeal numerous rulings by the district court, claiming that they received an inadequate damages and attorney fees award. NDOT appeals on the ground that the district court erred in awarding damages for the goodwill value of the Cowans' business and in calculating the costs and attorney fees award.

FACTS
In November 1999, the State condemned a one-half acre parcel of real property to expand Interstate 15 in Las Vegas, Nevada. Before the condemnation, the Cowans conducted business as Lou's Texaco on the parcel, which was located on the corner of Sahara Avenue and Rancho Drive. Lou's Texaco included a gasoline station franchise and a convenience store.
The Cowans had purchased this gas station franchise in October 1994 from the previous leasehold owners for $410,000, which included $260,000 for business goodwill. They paid $100,584 annually for the gasoline station lease and operated Lou's Texaco from 1994 until the condemnation in 1999.
Equilon Enterprises owned the real property upon which Lou's Texaco operated its business. The parties agree that Lou's Texaco was strategically located to attract business near the Interstate 15 on- and off-ramps, near two restaurants, and adjacent to a hotel casino. Stuart Cowan testified that the freeway and street traffic passing the gas station exceeded 400,000 cars daily.
In response to the State's condemnation action, the Cowans filed an inverse condemnation claim against the State, seeking compensation for lost business opportunity and lost business goodwill. Before trial, the State moved to dismiss the Cowans' counterclaim and to exclude evidence of lost business opportunity and lost business goodwill. The district court denied the State's motion to dismiss the inverse condemnation counterclaim and permitted the Cowans to present lost business goodwill evidence, but excluded evidence of lost business opportunity.
Stuart Cowan testified that he was unable to find a comparable gas station franchise available for purchase in the Las Vegas area. John Arfuso, an experienced Las Vegas gas station franchise operator, testified that oil companies have systematically discontinued the extension of new gas station franchise leases in the Las Vegas area, rendering such new leases unavailable.
The jury awarded the Cowans $260,000 as compensation for lost business goodwill. The State appeals from this portion of the judgment and asserts that just compensation in the condemnation context does not include recovery for lost business goodwill. The State also challenges the district court's calculation of costs and attorney fees. The Cowans cross-appeal, contending that numerous errors before, during, and after trial resulted in an inadequate recovery, and that they did not receive just compensation for the loss of their business. They also appeal the amount of attorney fees awarded.

DISCUSSION

Inverse condemnation
The Cowans attempted to characterize their counterclaim as one for inverse condemnation, and the district court agreed with the characterization. Inverse condemnation is an "action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency."[2] Here, the State exercised the formal power of eminent domain by filing its complaint for title to the parcel and naming the Cowans as parties. Thus, an inverse condemnation counterclaim by the Cowans was inappropriate in this case, and the arguments based on the finding of inverse condemnation are without merit.

Compensation for loss of a business in a condemnation action
The State argues that the award of damages for lost business goodwill is reversible error. Generally speaking, this court's *4 case law supports the State's position. In Clark County v. Sun State Properties, we held that NRS 37.115 codifies the undivided-fee rule, by which the condemned property is first valued as though it were unencumbered and then the total award is apportioned among the various interests.[3] Ordinarily, under the undivided-fee rule, the lessee would be compensated only for the value of the leasehold, but not for damages based on any business loss.[4] This court in Sun State Properties explained the reasoning behind the rule as follows:
"The duty of the public to make payment for the property which it has taken is not affected by the nature of the title or by the diversity of interests in the property. The public pays what the land is worth, and the amount so paid is to be divided among the various claimants, according to the nature of their respective estates."[5]
Under this rule, the State is required to pay for what it gains, namely, the real property, but not for the loss to the business owner. Traditionally, damage to a business (as opposed to the taking or damaging of its physical assets) has been treated as a noncompensable loss, even when the damage or destruction occurs because a condemning agency takes the land on which the business is conducted.[6] Since the business is not taken for use as a going concern, the condemnor does not acquire the going-concern value of the business and should not be required to compensate for that which is not taken.[7] In this case, NDOT is not getting any benefit from the business, as it is acquiring only the real property.
However, this court has recognized that under certain exceptional circumstances, the business owner may be compensated over and above the value of the real property. In National Advertising Co. v. State, Department of Transportation, this court recognized that when the condemnation of the real property results in the business being destroyed, the business owner should be compensated.[8] Specifically, this court reasoned that lessees of billboards should be compensated for lost billboard advertising income when the State condemned the underlying property and the billboards could not be relocated.[9]
The instant case is analogous to National Advertising. The evidence presented at trial supported the finding that when the Sahara-Rancho property was condemned, the Cowans' business was destroyed. The Cowans were unable to relocate their business because oil companies were not extending new leases for gas station franchises in the Las Vegas area. Consequently, the lease's value was inextricably tied to the unique location of the real estate that was condemned. In this situation, we conclude that the undivided-fee rule does not adequately compensate the lessee for what was taken. The Nevada Constitution mandates that "[p]rivate property shall not be taken for public use without just compensation."[10] Therefore, the State must compensate the Cowans for the destruction of their business.

Measure of damages
The district court determined that the measure of damages is the business's goodwill. This measure has support in treatises and case law from other jurisdictions. In Nichols on Eminent Domain, the damages issue is discussed as follows:
If the business cannot be relocated, or is relocated only at a substantial cost of patronage and profits, the business owner suffers the loss of an intangible business asset, in addition to whatever tangible assets *5 may have been taken. This intangible asset is commonly referred to as business goodwill. While different jurisdictions vary slightly in their definitions of goodwill, the term generally is used to describe that component of value attributed to a business's reputation in the community, loyal customer base and ability to attract new customers. This intangible element imbues a business with value which cannot be accounted for by a mere examination of its physical or tangible assets; in short, where the whole business exceeds the sum of its tangible parts, business goodwill accounts for the additional value.[11]
Two Michigan cases, in which compensation for goodwill was allowed, involved facts similar to our present case. In Michigan State Highway Commission v. L & L Concession Co.,[12] the concessionaire at a racetrack that had been condemned was compensated for his business's going-concern value. The court held that the business's value could be recovered separate and apart from the leasehold value. In City of Lansing v. Wery,[13] a restaurant on condemned property could not be relocated. The court determined that "where special facts similar to those present in L & L exist, a court may properly consider goodwill as evidence of the value of the leasehold or the capacity of the realty for use."[14] We agree with these authorities that business goodwill is the appropriate measure of damages in cases such as this one; accordingly, the district court did not err in admitting evidence of business goodwill.
Even so, the Cowans argue that the trial court erred by not allowing evidence of lost business opportunity or lost income. Actually, although the district court stated that projected lost income would not be allowed, the testimony of the Cowans' appraiser did include this information. The Cowans cite our decision in National Advertising for the proposition that lost income should be allowed.[15] Although we did allow compensation in the form of lost income in that case, it is distinguishable because goodwill cannot be valued for billboards, but it can be assessed for an existing business. Additionally, as recognized in one treatise, "[t]here is no single method to value goodwill. The method used will depend on the circumstances in each case, and more importantly, on the type of business being valued."[16] Generally, no compensation is awarded for anticipated profits at the location taken by condemnation.[17] The noncondemnation cases that the Cowans cite are inapposite. Valuation based on business goodwill is a more appropriate measure of the Cowans' damages.

Admission of original purchase price
The Cowans maintain that the district court abused its discretion in admitting evidence of the price they paid to purchase the business-goodwill interest in their franchise in 1994. According to the Cowans, this 1994 amount did not fairly reflect the value of their business goodwill on the date the State took the property in 1999, and the admission of this amount prejudiced their case. We do not agree that the district court abused its discretion.
The trial court is permitted wide discretion in determining the admissibility of evidence in a condemnation action.[18] Here, the district court allowed evidence of the original price that the Cowans paid for the business-goodwill interest in 1994. The five-year gap in time from the date the Cowans purchased the franchise in 1994 until the date the State condemned the property in 1999 was not so remote, nor any increase in *6 business value so extensive, that the original purchase price was an unfair criterion for the jury to consider in calculating damages. Therefore, we conclude that the district court did not abuse its discretion in admitting evidence of the price that the Cowans paid for business goodwill when they purchased the franchise.

Comparable California sales
The Cowans maintain that the district court abused its discretion, resulting in substantial prejudice to their case, when it excluded evidence of comparable California sales and appraisals. The Cowans assert that this evidence should have been admitted because comparable properties could not be found in the Clark County area.
In Nevada, the district court has discretion to exclude evidence pursuant to NRS 48.035(1).[19] This court has noted,
NRS 48.035 allows the district court to exclude evidence if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice or undue delay. Even if evidence is otherwise admissible, a trial court may exclude the evidence after striking a proper balance between the probative value of the evidence and its prejudicial dangers. A district court's decision whether to exclude or admit evidence will only be reversed if it is "manifestly wrong."[20]
Here, the district court excluded evidence of California property sales and appraisals because it was not probative of the real property situation in Nevada and "it would be highly confusing and misleading to this jury." The district court did not abuse its discretion in excluding this evidence.

Exclusion of gaming value
The Cowans allege that the district court also erred in not considering the gaming value of the business. Their contention that they had an unrestricted gaming license to install thirteen slot machines, even though they had not installed them, is not supported by the record. Furthermore, lost business opportunity is not a compensable item for condemnation unless specific statutes or constitutional provisions require such compensation.[21] We conclude that the district court did not abuse its discretion in excluding such evidence.

Evidence of value
Additionally, the Cowans argue that the $260,000 award they received is too low and was not in the range of testimony presented. It is true that the Cowans presented testimony that they should be awarded between $1.6 and $1.8 million. However, the jury was free to disbelieve that testimony, particularly since part of that testimony was based on inappropriate factors such as lost business income and lost business opportunity. Other evidence, including the purchase price five years earlier, suggested a lower value. Consequently, the district court did not err in entering judgment on the jury's verdict.[22]

Attorney fees and costs
The district court awarded the Cowans attorney fees in the amount of $97,650, based on $325 per hour for the estimated number of hours. The Cowans argue that the attorney fees should have been much higher, based on the contingency fee agreement they had with their attorneys, since the federal Uniform Relocation Assistance and Real Property Acquisitions Policies Act[23] requires *7 payment of fees "actually incurred" in an inverse condemnation proceeding. As explained above, however, this was not an inverse condemnation proceeding.
The State argues that the Cowans' counsel did not properly demonstrate the amount of hours worked and that costs exceeded statutory limits. We disagree and conclude that the district court's award of attorney fees and costs was not an abuse of discretion.

Miscellaneous allegations
The Cowans assert that the State's attorney and the State's expert witness engaged in misconduct. These allegations are without merit because there was no contemporaneous objection[24] and because the alleged misconduct was appropriate cross-examination.

Post-trial motions
The Cowans also assert that the district court committed numerous errors which substantially prejudiced their case. The Cowans argue that the district court should have granted their post-trial motion to enter a judgment notwithstanding the verdict, grant a new trial or grant an additur. We disagree. The district court did not abuse its discretion, and the fact that the jury verdict was less than the Cowans anticipated does not justify reversing the jury's verdict.

CONCLUSION
We affirm the district court's judgment.
AGOSTI and BECKER JJ., concur.
MAUPIN, J., concurring in part and dissenting in part.
I concur with the majority that Stuart and Barbara Cowan were entitled to recover goodwill as part of the jury's determination of fair market value, and that the district court properly considered their claim for attorney fees generated in connection with the condemnation action.[1]
I would, however, reverse and remand this matter for a new trial. Given the lack of local comparative sales information available to the parties below, the district court should have allowed the Cowans to present evidence of comparable sales from other states. In my view, they established an adequate predicate for these proofs.
GIBBONS, J., concurring in part and dissenting in part.
I concur with the majority that business owners must be compensated for the fair market value of their business when the business cannot be relocated. However, the district court abused its discretion by admitting into evidence the original purchase price of the business and precluding the respondents from introducing evidence of comparable sales and appraisals from California.
The majority acknowledges that the Cowans are entitled to the fair market value of their business. The fair market value of the business must be calculated as of the date of condemnation as set forth in NRS 37.120(1). The condemnation occurred in November 1999. The original price paid for the business by the Cowans in 1994 may have some slight historical relevance, but should have been excluded from evidence because of the danger of unfair prejudice, confusion of the issues, and the potential to mislead the jury.[1] Subject to the exception set forth in NRS 37.120(1), I further believe that the valuation as of the date of the actual commencement of *8 the trial also has a danger of creating the same unfair prejudice.
With reference to the comparable California sales and appraisals, the evidence showed that there were insufficient comparable sales in Clark County to utilize for appraisal purposes. Therefore, the Cowans should have the right to present sales and appraisal information through expert opinion testimony based upon comparable California sales pursuant to NRS 50.275 and NRS 50.285. The Cowans' expert would be subject to cross-examination by the State of Nevada. It would be up to the trier of fact to determine how much weight should be given to the testimony of an expert appraiser who utilizes valuations from comparable California sales.
NOTES
[1] The Honorable Robert E. Rose, Justice, voluntarily recused himself from participation in the decision of this matter. The Honorable Michael L. Douglas, Justice, did not participate in the decision of this matter.
[2] Thornburg v. Port of Portland, 233 Or. 178, 376 P.2d 100, 101 n. 1 (1962), quoted in United States v. Clarke, 445 U.S. 253, 257, 100 S.Ct. 1127, 63 L.Ed.2d 373 (1980).
[3] 119 Nev. 329, 337, 72 P.3d 954, 959 (2003).
[4] Id. at 336-37, 72 P.3d at 958-59.
[5] Id. at 336, 72 P.3d at 958 (quoting 4 Julius L. Sackman, Nichols on Eminent Domain § 12.05[1], at 12-104 (rev.3d ed.2002)).
[6] 8A Patrick J. Rohan & Melvin A. Reskin, Nichols on Eminent Domain § 29.02[1], at 29-12 to 29-18 (3d ed.2004) [hereinafter Nichols].
[7] Kimball Laundry Co. v. U.S., 338 U.S. 1, 11-12, 69 S.Ct. 1434, 93 L.Ed. 1765 (1949).
[8] 116 Nev. 107, 113, 993 P.2d 62, 66 (2000).
[9] Id. at 113-14, 993 P.2d at 66-67.
[10] Nev. Const. art. 1, § 8(6).
[11] 8A Nichols, supra note 6, § 29.01[1], at 29-5 to 25-6 (footnotes omitted).
[12] 31 Mich.App. 222, 187 N.W.2d 465 (1971).
[13] 68 Mich.App. 158, 242 N.W.2d 51 (1976).
[14] Id. at 54.
[15] 116 Nev. 107, 993 P.2d 62 (2000).
[16] 8A Nichols, supra note 6, § 29.07[2][a], at 29-54 (footnote omitted).
[17] Id. § 29.05[4], at 29-44 to 29-47 (cases cited therein).
[18] See City of Elko v. Zillich, 100 Nev. 366, 369, 683 P.2d 5, 7 (1984) (noting that "the trial court is allowed wide discretion in passing on matters relating to expert testimony").
[19] NRS 48.035(1) states: "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues or of misleading the jury."
[20] Schlotfeldt v. Charter Hosp. of Las Vegas, 112 Nev. 42, 45-46, 910 P.2d 271, 273 (1996) (citation omitted) (quoting Daly v. State, 99 Nev. 564, 567, 665 P.2d 798, 801 (1983)).
[21] Winooski Hydroelectric Co. v. Five Acres of Land, 769 F.2d 79 (2d Cir.1985) (applying Vermont law); Orange Cty. Flood Cont. Dist. v. Sunny Crest Dairy, Inc., 77 Cal.App.3d 742, 143 Cal.Rptr. 803 (1978).
[22] K-Mart Corporation v. Washington, 109 Nev. 1180, 866 P.2d 274 (1993) (observing that damages awards within a jury's province are generally infirm only if influenced by passion or prejudice).
[23] 42 U.S.C. §§ 4601-4655 (2000) (codified in Nevada by NRS 342.105).
[24] Ringle v. Bruton, 120 Nev. 82, 86 P.3d 1032 (2004).
[1] I also agree that the district court did not abuse its discretion in the admission of the original purchase price of the property, and that admissibility of such evidence should remain within the district court's sound discretion, considering whether the original purchase was remote in time, whether the original purchase was voluntary and whether economic or physical conditions concerning the property have changed. See Epstein v. City and County of Denver, 133 Colo. 104, 293 P.2d 308, 310 (1956). That said, I also believe that district courts in this state should provide limiting instructions concerning the probative value of such evidence. Accordingly, in my view, juries in eminent domain actions should be advised that evidence of the original purchase price, while admissible, is not determinative of value, but is relevant to provide orientation and context for the various opinions of the value of the property as of the date of taking.
[1] NRS 48.035(1).