**132 Nev., Advance Opinion 57**

IN THE SUPREME COURT OF THE STATE OF NEVADA

JOHN FRITZ; AND MELISSA FRITZ,
Appellants,
vs.
WASHOE COUNTY,
Respondent.

No. 67660

**FILED**

AUG 04 2016

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court summary judgment in an inverse condemnation action. Second Judicial District Court, Washoe County; Janet J. Berry, Judge.

*Reversed and remanded.*

Luke A. Busby, Reno,
for Appellants.

Christopher J. Hicks, District Attorney, and Stephan J. Hollandsworth, Deputy District Attorney, Washoe County,
for Respondent.

---

BEFORE DOUGLAS, CHERRY and GIBBONS, JJ.

*OPINION*

By the Court, DOUGLAS, J.:

In this appeal, we are asked to consider whether, when a county approved subdivision maps, directed the flow of water, and accepted street dedications during the building process of two upstream

SUPREME COURT
OF
NEVADA

(O) 1947A

11/3/16: Corrected per letter to publishers. CF

16-24150

developments, its actions constituted substantial involvement to support inverse condemnation in the flooding of a downstream property. We conclude that inverse condemnation is a viable theory of liability and genuine issues of material fact remain as to the County's substantial involvement in the development of the drainage system at issue. We therefore reverse the district court's grant of summary judgment.

## BACKGROUND

In 2001, appellants John and Melissa Fritz purchased property adjacent to Whites Creek. Before the Fritzes purchased their property, Washoe County approved plat maps for the upstream development, Lancer Estates. After the Fritzes purchased their property, Washoe County approved plat maps for another upstream development, Monte Rosa. Washoe County subsequently accepted various street dedications that were incorporated into the upstream developments' drainage system, which diverts water to Whites Creek.[1] Since the construction of the developments, the Fritzes' property floods during heavy rainstorms.

In 2013, the Fritzes filed an inverse condemnation complaint against Washoe County. The Fritzes alleged that Washoe County approved plat maps, managed and directed development of the water drainage system, approved final maps, and ultimately accepted dedication of the water drainage system that increased the flow of water to Whites

_____

[1]It is clear from the record that Washoe County accepted certain street dedications. However, it is not clear whether Washoe County accepted dedication of other improvements incorporated into the drainage system, formally or informally.

Creek and caused flooding to their property. According to the Fritzes, Washoe County's conduct constituted substantial involvement in activities that caused the taking of their property.

Washoe County answered and then filed a motion for summary judgment, arguing that the Fritzes did not have standing to assert claims against it for plat maps it approved before the Fritzes owned their property. As to the maps approved after the Fritzes came into ownership, and its acceptance of dedications, Washoe County argued that its conduct was not substantial and did not give rise to the Fritzes' inverse condemnation claim.

The Fritzes opposed Washoe County's motion for summary judgment and attached documents detailing Washoe County's involvement in the developments' draining scheme. One such document was a 1996 letter from the Nevada Department of Transportation (NDOT) to Washoe County. In the letter, NDOT refers to a previous agreement with Washoe County wherein Washoe County would direct the developers to convey water north through Lancer Estates. NDOT then requested that Washoe County follow through with that agreement. In addition to the letter, the Fritzes submitted the Lancer Estates Hydrology Report, wherein the developers stated that they were in compliance with the NDOT and Washoe County agreement to convey water north.

Ultimately, the district court granted summary judgment in favor of Washoe County. The court reasoned that Washoe County's approval of subdivision maps and acceptance of dedications did not amount to substantial involvement sufficient to support a claim for inverse condemnation. The Fritzes appealed.

## DISCUSSION

"This court reviews a district court's grant of summary judgment de novo, without deference to the findings of the lower court." *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). Summary judgment is proper if "the pleadings and other evidence on file demonstrate that no genuine issue as to any material fact [remains] and that the moving party is entitled to a judgment as a matter of law." *Id.* (alteration in original) (internal quotation omitted). When reviewing a summary judgment motion, all evidence and reasonable inferences "must be viewed in a light most favorable to the nonmoving party." *Id.*

### Standing

On appeal, Washoe County contends that the Fritzes do not have standing to assert their inverse condemnation claim because Washoe County approved the majority of subdivision maps before the Fritzes owned the land. Construing the facts in a light most favorable to the Fritzes, we disagree.

Takings claims lie with the party who owned the property at the time the taking occurred. *Argier v. Nev. Power Co.*, 114 Nev. 137, 139, 952 P.2d 1390, 1391 (1998). The Fritzes alleged that their property was taken by flooding as a result of heavy rainstorms occurring during the course of their ownership. The district court made no findings with regard to when the taking occurred. Thus, a genuine issue of material fact remains as to the issue of standing, and we cannot uphold summary judgment on this ground.

### Substantial involvement

The district court found that Washoe County approved maps and accepted certain dedications. The Fritzes presented evidence that

Washoe County also directed the developer to divert water north from Mount Rose Highway into Whites Creek. According to the Fritzes, these actions constitute substantial government involvement in private activities that led to an increased quantity and flow of water in Whites Creek and flooding on their property. Washoe County contends that approval of maps and acceptance of dedications are insufficient to constitute substantial involvement giving rise to a claim for inverse condemnation.

The Takings Clause of the United States Constitution provides that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V. Similarly, the Nevada Constitution provides that "[p]rivate property shall not be taken for public use without just compensation having been first made." Nev. Const. art. 1, § 8(6). When a governmental entity takes property without just compensation, or initiating an eminent domain action, an aggrieved party may file a complaint for inverse condemnation. *State, Dep't of Transp. v. Cowan*, 120 Nev. 851, 854, 103 P.3d 1, 3 (2004).

Nevada caselaw has not clearly and comprehensively set forth the elements of inverse condemnation, but we do so now. As the counterpart of eminent domain, inverse condemnation requires a party to demonstrate the following: (1) a taking (2) of real or personal interest in private property (3) for public use (4) without just compensation being paid (5) that is proximately caused by a governmental entity (6) that has not instituted formal proceedings. *See Dickgieser v. State*, 105 P.3d 26, 29 (Wash. 2005); *see also ASAP Storage, Inc. v. City of Sparks*, 123 Nev. 639, 645-47, 173 P.3d 734, 738-39 (2007) (providing that an interest in real or personal property satisfies the private property requirement); *Gutierrez v.*

SUPREME COURT
OF
NEVADA

(O) 1947A

5

*Cty. of San Bernardino*, 130 Cal. Rptr. 3d 482, 485 (Ct. App. 2011) (providing that the taking must be proximately caused by a government entity).

A private party cannot recover in inverse condemnation for property taken by another private party. However, when a private party and a government entity act in concert, government responsibility for any resulting damage to other private property may be established by demonstrating that the government entity was substantially involved "in the development of private lands for public use which unreasonably injure[d] the property of others." *Cty. of Clark v. Powers*, 96 Nev. 497, 505, 611 P.2d 1072, 1077 (1980); *see Gutierrez*, 130 Cal. Rptr. 3d at 485 ("To be a proximate cause, the design, construction, or maintenance of the improvement must be a substantial cause of the damages.").

The district court reached its conclusion that Washoe County was not substantially involved, in part, by distinguishing the government involvement here from the government involvement in *Powers*. We affirmed a district court's judgment that held the County liable in inverse condemnation for acting in conjunction with various private parties to cause large amounts of water to be cast upon the property of the plaintiff landowners. 96 Nev. at 499-500, 611 P.2d at 1073-74. We held the County liable because it "participated actively in the development of these lands, both by its own planning, design, engineering, and construction activities and by its adoption of the similar activities of various private developers as part of the County's master plan for the drainage and flood control of the area." *Id.* at 500, 611 P.2d at 1074.

We agree with the district court that *Powers* is distinguishable. The government conduct in *Powers* can be described as physical involvement directly attributable to the government entity. Here, however, the Fritzes did not provide any evidence that Washoe County participated in the engineering and construction of the developments. Thus, the district court correctly concluded that the significance of Washoe County's involvement here is distinguishable from that in *Powers*.

However, drawing this distinction is not dispositive of the issues raised in this appeal. *Powers* indicates that an act, such as construction, which by any measure reaches the height of substantial involvement, is sufficient to establish a claim. We have not limited the range of actions that constitute substantial involvement to physical engagement in private activities. We have, nonetheless, provided that claims based on mere planning are outside the scope of substantial involvement. *Sproul Homes of Nev. v. State, Dep't of Highways*, 96 Nev. 441, 443, 611 P.2d 620, 621 (1980) ("It is well-established that the mere planning of a project is insufficient to constitute a taking for which an inverse condemnation action will lie."). Hence, this case presents a novel question: whether government activities short of physical labor, but with more engagement than mere planning, can constitute substantial involvement in a private development sufficient to constitute public use in support of inverse condemnation. While we have not previously addressed this question, the California courts have addressed similar factual situations.

The district court relied in part on *Ullery v. Contra Costa County* to reach its determination that the Fritzes' inverse condemnation claim was not actionable. 248 Cal. Rptr. 727 (Ct. App. 1988). In *Ullery,*

Supreme Court
of
Nevada

(O) 1947A

7

the developer of property located at the bottom of a hill made an offer of dedication of a water drainage easement in a natural stream running parallel to the bottom of the hillside, but the County expressly rejected the dedication. *Id.* at 728-29. Thereafter, neither the County nor City performed maintenance on the drainage easement. *Id.* at 729. A landslide later injured two hillside neighboring properties, and the landowners brought suit against the County, City, and Sanitary District, arguing that the County's approval of tentative and final subdivision maps resulted in an "environment conducive to landslide damage" caused by erosion from water drainage. *Id.* at 731 (internal quotation omitted).

In this case, apparently analogizing it to *Ullery*,[2] the district court concluded that Washoe County's approval of subdivision maps and acceptance of dedications was insufficient to support the Fritzes' inverse condemnation claim. However, the district court misapplied *Ullery*. The *Ullery* court recognized that a public use or improvement cannot be demonstrated by mere subdivision map approval, finding that, without the County's acceptance of the dedication, its "sole participation in the development process was approval of the tentative and final subdivision maps. This alone [was] not enough to give rise to establish inverse condemnation liability." *Id.* at 731-32. Thus, *Ullery* draws a distinction between merely approving subdivision maps and taking other actions, including accepting dedications. The former, on its own, does not convert

---

[2]Although the district court's order does not directly state that the instant case is analogous to *Ullery*, this conclusion can be drawn from its use of the case to reach its conclusion that approving subdivision maps and dedications is insufficient to constitute inverse condemnation liability.

the private development into a public use that gives rise to inverse condemnation liability. We adopt this rule from *Ullery*.

However, the case at bar is distinguishable from *Ullery*. The Fritzes alleged that Washoe County did more than approve subdivision maps. The Fritzes provided evidence that, among other activities, Washoe County formally accepted dedications of the streets in the developments and entered into an agreement with NDOT to direct water from the developments north into Whites Creek, rather than to allow the water to follow its natural path down Mount Rose Highway. Therefore, unlike the county in *Ullery*, Washoe County has taken actions beyond merely approving the subdivision maps, and the Fritzes' inverse condemnation claim here is actionable.

After applying *Ullery*, we conclude that genuine issues of material fact exist as to whether Washoe County's actions constituted substantial involvement in the drainage system sufficient to deem it a public use. In particular, when resolving a summary judgment motion, the district court has the obligation to "set forth the undisputed material facts and legal determinations on which the court granted summary judgment." NRCP 56(c). In this case, however, the district court's order summarized the basic facts, but ignored certain evidence provided by the parties and did not explicitly state which facts were undisputed. On appeal, while the parties periodically alleged in their briefs that the facts are undisputed, they differ as to the import and effect of these facts on the substantial involvement considerations.

Therefore, because genuine issues of material fact remain, we reverse the district court's grant of summary judgment and remand this matter to the district court for proceedings consistent with this opinion.[3]

_____, J.
Douglas

We concur:

_____, J.
Cherry

_____, J.
Gibbons

_____

[3]Washoe County also contends that the injuries caused by flooding were not substantial. However, the district court did not make findings on this issue sufficient for this court to review. Therefore, we decline to consider this question.